686 A.2d 25

**COMMONWEALTH of Pennsylvania**

v.

**Louis SAUNDERS, Appellant.**

Superior Court of Pennsylvania.

Submitted Aug. 26, 1996.

Filed Nov. 20, 1996.

---

562

Daniel H. Greene, Philadelphia, for appellant.

Peter J. Gardner, Assistant District Attorney, Philadelphia, for the Commonwealth, appellee.

Before: TAMILIA, SAYLOR and OLSZEWSKI, JJ.

OLSZEWSKI, Judge:

May a trial court substitute an alternate juror once the original jury has commenced deliberations? One court has commented that this question is "an important issue in the administration of criminal justice." *United States v. Hillard,* 701 F.2d 1052, 1056 (2d Cir.1983), *cert. denied,* 461 U.S. 958, 103 S.Ct. 2431, 77 L.Ed.2d 1318 (1983). Nevertheless, until now, the question has remained unanswered in our Common-

wealth. The instant case, however, provides us with the vehicle in which to definitively address the issue.

On September 17, 1993, appellant Louis Saunders was arrested in connection with the crack-house shooting death of Belton Porterfield. Saunders' jury trial commenced on January 24, 1995. On the morning of January 27th, a Friday, the trial court ordered the original jury to leave the courtroom and begin its deliberations. After the twelve principal jurors had exited the courtroom, however, the court turned its attention to the two alternate jurors as follows:

THE COURT: I will ask the alternates to stay in the courtroom for a few moments.

I am going to ask the alternates to stand by in case they have to fill in for someone on the jury.

It has happened after the jury has gone out to deliberate, where we need an alternate to fill in.

I want you to stand by. You will be separated from the other members of the jury and from the public because you may have to enter the jury room and consider the case with the other jurors.

So you are still on jury duty until we decide what we are going to do.

N.T.; 1/27/95 at 53–54.

At approximately 2:35 p.m., the original jury returned to the courtroom and asked the trial court to clarify the various degrees of criminal homicide. The court, in the presence of both the twelve principal and the two alternate jurors, provided the requested supplemental instructions. The principal jurors retired to continue deliberations at 2:55 p.m and, at approximately 4:00 p.m., all of the jurors were dismissed for the weekend and instructed to return Monday morning.

The following Monday morning brought unexpected news. Unfortunately, juror number eight called the court and informed that she was stricken ill with the flu. As the juror was unable to schedule an appointment with her physician until Wednesday, February 1st, the trial court concluded that the likelihood of her returning before the week ended was "ex-

tremely slim." N.T., 1/30/95 at 16. In light of the sudden obstruction to the proceedings, the trial court found itself facing the very real prospect of a mistrial. In order to avoid such a drastic consequence, the court dismissed the sick juror and impaneled the first alternate juror, number thirteen. The judge took these actions, over defense counsel's objection, at some time shortly after 12:07 p.m.

At 2:05 p.m., the jury returned with its verdict. Saunders was found guilty of second-degree murder, possessing instruments of crime and carrying firearms on a public street. The trial court immediately imposed the mandatory life sentence for the murder conviction and suspended the remaining sentences.

█ On appeal, Saunders contends that the trial court erred in impaneling an alternate juror after deliberations had begun. We are constrained to agree. Pa.R.Crim.P. 1108 reads as follows:

### RULE 1108.  ALTERNATE TRIAL JURORS

(a) The trial judge may direct that a reasonable even number of jurors in addition to the principal jurors be called and impanelled to sit as alternate jurors. Alternate jurors in the order in which they are called shall replace principal jurors who, **prior to the time the jury retires to consider its verdict,** become unable or disqualified to perform their duties. **An alternate juror who does not replace a principal juror shall be discharged before the jury retires to consider its verdict.**

Pa.R.Crim.P. 1108(a) (emphasis added).

█ According to the plain and simple words of Rule 1108(a), the trial court erred in failing to discharge the alternate jurors before the jury retired to deliberate. There is no other conclusion. Further, the Rule only provides for the substitution of alternate jurors "prior to the time the jury retires to consider its verdict." Accordingly, there is no authorization in Pennsylvania for a trial court to replace a principal juror after deliberations have begun. Quite simply, the trial court overstepped its authority in the instant matter.

Thus, the question becomes whether the trial court's errors are fatal.

This question is not so easily answered by this, or any other, court in our land. In fact, more than one court has observed that there exists a "significant division of opinion in the legal community as to the wisdom and constitutionality of allowing a substitution of an alternate juror after the jury has begun deliberations." *State v. Lehman,* 108 Wis.2d 291, 321 N.W.2d 212, 219 (1982); *People v. Burnette,* 775 P.2d 583, 591 (Colo. 1989) (Vollack, J., concurring). A review of decisions from around our nation supports this conclusion.

A number of courts and commentators have concluded that a post-submission juror substitution constitutes a reversible error. *See United States v. Lamb,* 529 F.2d 1153 (9th Cir. 1975); *Lehman, supra;*[1] *People v. Ryan,* 19 N.Y.2d 100, 278 N.Y.S.2d 199, 224 N.E.2d 710 (1966); C. Wright, Federal Practice and Procedure § 388, Vol. 2 at 52 (1969). *See also* 3 ABA Standards for Criminal Justice, Trial by Jury, § 15–2.7, Commentary at 15.74 (2d. ed. 1980) ("[I]t is not desirable to allow a juror who is not familiar with prior deliberations to suddenly join the group and participate in the voting without the benefit of the prior group discussion."). These legal scholars have reasoned that "[a] lone juror who could not in good conscience vote for conviction could be under great pressure to feign illness or other incapacity so as to place the burden of decision on an alternate juror." *Lamb,* 529 F.2d at 1156. Moreover,

[i]f, during deliberations, a juror is discharged and another substituted, the eleven regular jurors will have had the benefit of the views of the discharged juror while the alternate will not. The eleven regular jurors will have formed their views without the benefit of the views of the alternate juror, and the alternate juror who is unfamiliar with the prior deliberations will participate without the

1. The *Lehman* court, which utilized a harmless error analysis for its immediate decision, held that "hereafter we shall view substitution of an alternate juror during deliberations as reversible error." 321 N.W.2d at 223.

benefit of the prior group discussion. If deliberations have progressed to the point where the eleven regular jurors are in substantial agreement, the alternate juror may find it difficult to persuade and convince the eleven who have already come to an understanding.

*Lehman,* 321 N.W.2d at 220.

On the other hand, the Supreme Court of Georgia has found that post-deliberation juror substitution is, without question, entirely proper. *Tanner v. State,* 242 Ga. 437, 249 S.E.2d 238 (1978). The court reasoned that

[a]lternate jurors have the same qualifications as regular jurors, take the same oath as regular jurors, obey all court orders and admonitions, hear and see the proceedings and otherwise conduct themselves as regular jurors, except that they do not retire with the regular jurors to deliberate the case. When an alternate later is admitted to the panel of twelve in substitution for an original, he has full access to previous deliberations and may apprise himself of what has transpired in his absence by asking appropriate questions or by listening to the deliberations. We shall presume that he casts his vote knowingly and intelligently.

*Id.,* 249 S.E.2d at 240.

Our tireless research, however, has revealed that the majority of courts which have examined this issue are positioned in between these two opposing views. If a post-submission substitution has been found to be erroneous, the bulk of courts next focus on the extent to which the error is prejudicial. After carefully pondering the issue, we agree that this approach is most sound and best effectuates justice for our state. A *per se* rule of reversible error ignores the dictates of Pa.R.Crim.P. 2, which states that Pennsylvania's Rules of Criminal Procedure "shall be construed to secure simplicity in procedure, fairness in administration and the elimination of unjustifiable expense and delay." Conversely, by providing blanket authorization to our trial courts for post-submission substitution, we would be rendering the provisions of Pa.

R.Crim.P. 1108(a) ineffective. Neither of these results is acceptable.

Establishing that prejudice is a proper element in our analysis, however, is simply a preliminary step in resolving the issue. We must next determine who carries the burden of proof on this element. Our nation's courts are divided on this question as well. The federal judiciary has a tendency to place the burden upon the defendant. *See United States v. McFarland,* 34 F.3d 1508 (9th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 2257, 132 L.Ed.2d 264 (1995); *United States v. Quiroz–Cortez,* 960 F.2d 418 (5th Cir.1992); *United States v. Helms,* 897 F.2d 1293 (5th Cir.1990), *cert. denied,* 498 U.S. 900, 111 S.Ct. 257, 112 L.Ed.2d 215 (1990); *United States v. Ashby,* 864 F.2d 690 (10th Cir.1988); *United States v. Guevara,* 823 F.2d 446 (11th Cir.1987); *United States v. Foster,* 711 F.2d 871 (9th Cir.1983); *Hillard, supra; United States v. Kopituk,* 690 F.2d 1289 (11th Cir.1982), *cert. denied,* 463 U.S. 1209, 103 S.Ct. 3542, 77 L.Ed.2d 1391 (1983); *United States v. Phillips,* 664 F.2d 971 (5th Cir.1981), *cert. denied,* 457 U.S. 1136, 102 S.Ct. 2965, 73 L.Ed.2d 1354 (1982). Conversely, the state courts, as well as the District of Columbia Court of Appeals, are more apt to establish a presumption of prejudice which the prosecution must rebut. *See Claudio v. State,* 585 A.2d 1278 (Del.1991); *Burnette, supra; State v. Wideman,* 69 Haw. 268, 739 P.2d 931 (1987); *Bulls v. United States,* 490 A.2d 197 (D.C.1985); *People v. Collins,* 17 Cal.3d 687, 131 Cal.Rptr. 782, 552 P.2d 742 (1976); *People v. Dry Land Marina, Inc.,* 175 Mich.App. 322, 437 N.W.2d 391 (1989).

We believe that the citizenry of Pennsylvania is best served by following the state courts' lead. The Rules of Criminal Procedure "are intended to provide for the just determination of every criminal proceeding." Pa.R.Crim.P. 2. Accordingly, when the trial court proceeds in blatant violation of the Rules, without the defendant's consent, the trial court does so at its own risk. Clearly, our Supreme Court adopted Rule 1108(a) in order to protect both the Commonwealth and the defendant against the perils of post-submission substitution. While we do not agree with the *Lamb* court that prejudice is "manifestly

inherent," we cannot turn a blind eye to the genuine risk of a tainted verdict. Quite simply, we must insure that the jury function remains protected. As such, we find that in cases where the trial court has substituted an alternate juror after deliberations have begun, there is a presumption of prejudice to the defendant. Further, this presumption may only be rebutted by evidence which establishes that sufficient protective measures were taken to insure the integrity of the jury function. *See Burnette, supra; State v. Lipsky,* 164 N.J.Super. 39, 395 A.2d 555 (App.Div.1978).

■ Thus, we must next determine what measures need be taken to insure the integrity of the jury function. While this question has no precise answer, we are convinced that its solution begins with the trial court, prior to impaneling the alternate juror, extensively questioning the alternate and remaining jurors. The trial court must insure that alternate has not been exposed to any improper outside influences and that the remaining regular jurors are able to begin their deliberations anew. These are fundamental consideration that can not be ignored.

■ Further, after questioning the jurors, the trial court's instructions to the recomposed jury are of the uppermost importance. These instructions are the linchpin to securing the uprightness of the jury's verdict. First, the recomposed jury must be informed that the discharge of the original juror "was entirely personal and had nothing to do with the discharged juror's views on the case or the juror's relationship with fellow jurors." 88 A.L.R.4th 711, § 21a (citing *Commonwealth v. Connor,* 392 Mass. 838, 467 N.E.2d 1340 (1984)). This charge eliminates any impression among the remaining jurors that the discharged member's views on the case were improper and that they risk removal for having similar beliefs.

■ Next, the recomposed jury must be directed to begin deliberations anew. As noted by the Supreme Court of California:

[D]eliberations must begin anew when a substitution is made after final submission to the jury. This will insure

that each of the 12 jurors reaching the verdict has fully participated in the deliberations, just as each had observed and heard all proceedings in the case. ... [T]he court [must] instruct the jury to set aside and disregard all past deliberations and begin deliberating anew. The jury should be further advised that ... the law grants to the People and to the defendant the right to a verdict reached only after full participation of the 12 jurors who ultimately return a verdict; that this right may only be assured if the jury begins deliberations again from the beginning; and that each remaining original juror must set aside and disregard the earlier deliberations as if they had not been had.

*Collins,* 552 P.2d at 746–47. These instructions serve to "eliminate the impact of the influence of the excused juror, and [allow the regular jurors to] consider the evidence in the context of full and complete deliberations with the new juror." *Lipsky,* 395 A.2d at 558.

■ With the above considerations in mind, we turn our attention to the case at hand. Instantly, the trial court notably failed to insure the integrity of the jury function. The Commonwealth asserts that the trial court "questioned the remaining eleven jurors to insure that they were capable of beginning their deliberations anew." Appellee's brief at 28. This contention, which is supported by no citation, is belied by the record. The record reveals that the trial court, having determined that the sick juror could not continue, resolved, in the defendant's absence, to impanel the alternate and continue deliberations, "even if the defendant objects." N.T. 1/30/95, at 7. Moreover, a query of the alternate and remaining principal jurors never took place.

Further, and more troubling, is the trial court's instructions to the recomposed jury. The court charged as follows:

I am going to direct you to do this: When you retire to deliberate to see if you can reach a verdict in a reasonable time, I would like you to plan on starting deliberating over again, which may mean just going through the process again, to reach the point where you will continue from there.

**I would like you to advise the new juror who is taking the place of juror number eight as to what your deliberations were.**

Maybe you can go around the room without spending too much time and each juror can advise him as to his or her thoughts as to where you stand and what you consider.

If you do that, the juror will then know everything that juror number eight knew. It means a little bit of extra effort on your part to bring him up-to-date.

As of this moment, then you have twelve jurors and you can go ahead and decide the case. . . .

I think this is the most sensible way to handle the situation. **I would like you to briefly tell new juror number eight when you get back to the jury room exactly what went on in your deliberations so far,** what the position of each person might be and then sit down and proceed as though you were just starting over.

*Id.* at 28–29 (emphasis added).

These instructions, in effect, ordered that Saunders be tried before a panel of thirteen. The trial court did not instruct the original jurors to disregard their prior deliberations which involved the views of juror number eight. In fact, the trial court ordered to the contrary. The court directed the original jurors to disclose to the replacement what had transpired during their prior deliberations. Thus, the court's instructions to the recomposed jury not only failed to insure the integrity of the jury function, but, quite antithetically, served to compromise this integrity. Consequently, the views and comments of juror number eight may very well have remained a part of this trial when the final verdict was rendered. Since the Commonwealth has failed to establish that the integrity of the jury function was maintained in the instant case, the resulting verdict cannot be accepted. *See generally Commonwealth v. Krick,* 164 Pa.Super. 516, 67 A.2d 746 (1949) (allowing alternate jurors to retire with principal jurors after submission of the case constitutes reversible

error). In so holding, we echo the sentiments of the Court of Appeals for the 11th Circuit:

The rule is "the rule" and [proper] substituted juror procedure . . . is a narrowly limited exception to the rule, applicable only in extraordinary situations and, even then only when extraordinary precautions are taken . . . to ensure that the defendants are not prejudiced.

*Kopituk,* 690 F.2d at 1311.

Finally, we note that in reaching our decision today, we do not speak to the constitutionality of post-submission substitution. Our decision only pertains to redressing a violation of Rule 1108(a) of our state's Rules of Criminal Procedure. Whether a violation of Rule 1108(a) also constitutes a violation of our state or federal constitutions is a question left for another day.

Judgment of sentence vacated and case remanded for a new trial. Jurisdiction relinquished.