J-S26010-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| RONDELL SLAUGHTER, | |
| Appellant | No. 367 EDA 2013 |

Appeal from the PCRA Order Entered April 8, 2010
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s):CP-51-CR-0809732-2001

BEFORE:  BENDER, P.J.E., SHOGAN, J., and FITZGERALD, J.[*]

MEMORANDUM BY BENDER, P.J.E.:          **FILED SEPTEMBER 12, 2014**

Appellant, Rondell Slaughter, appeals from the April 8, 2010 order denying his first petition for relief filed pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546.  After careful review, we are compelled to reverse the PCRA court's order and remand for a new trial.

In a prior appeal before this Court, we summarized the factual and procedural history of Appellant's case as follows:

> On April 16, 2003, a jury convicted Appellant of arson, criminal conspiracy, and multiple counts of aggravated assault. His convictions stemmed from the February 26, 2001 firebombing of a home in which a drug dealing and prostitution operation was conducted.  Six people were wounded in this attack.  On June 19, 2003, Appellant was sentenced to an aggregate term of 35 to 70 years' incarceration.  On May 19, 2006, this Court affirmed Appellant's judgment of sentence, and

_____

[*] Former Justice specially assigned to the Superior Court.

our Supreme Court subsequently denied his petition for permission to appeal. ***Commonwealth v. Slaughter***, 903 A.2d 52 (Pa. Super. 2006) (unpublished memorandum), *appeal denied*, 911 A.2d 935 (Pa. 2006). Appellant did not petition for permission to appeal to the United States Supreme Court and, therefore, his judgment of sentence became final on August 17, 2006. ***See Commonwealth v. Owens***, 718 A.2d 330, 331 (Pa. Super. 1998) (under the PCRA, petitioner's judgment of sentence becomes final ninety days after our Supreme Court rejects his or her petition for allowance of appeal since petitioner had ninety additional days to seek review with the United States Supreme Court).

On October 24, 2007, Appellant filed his first *pro se* PCRA petition and counsel was appointed. That petition was denied on April 8, 2010. On April 21, 2010, Appellant filed a second *pro se* PCRA petition….[1] Therein, he alleged ineffective assistance of his trial and appellate counsels. However, prior to the court's ruling on Appellant's second PCRA petition, Appellant attempted to file a *pro se* notice of appeal from the court's April 8, 2010 order denying his *first* petition. That notice of appeal was time stamped as "Received Accepted For Review Only" on May 4, 2010. Therefore, it is clear that Appellant's attempt to file his appeal was timely. ***See*** Pa.R.A.P. 903(a) ([stating] "notice of appeal … shall be filed within 30 days after the entry of the order from which the appeal is taken"). Nevertheless, the Philadelphia County Clerk of Courts rejected Appellant's notice of appeal because his second PCRA petition was still pending before the court.[2]

On July 8, 2011, the PCRA court denied Appellant's second petition for post conviction relief as untimely….

_____

[1] Appellant also filed a "Supplemental *Pro Se* Motion for Post Conviction Relief" on April 22, 2010.

[2] Specifically, in a handwritten note on its "Returned Correspondence" Memorandum received by Appellant, the Clerk of Courts indicated that Appellant's notice of appeal was being returned for the following reason: "On 4-21-10 you filed a new PCRA Petition. You now have to wait until Judge rules on that Petition before you file an appeal. You can only do one at a time." ***See*** Appellant's Exhibit B-1.

*Commonwealth v. Slaughter*, 2036 EDA 2011, unpublished memorandum at 1-3 (Pa. Super. filed October 26, 2012).

Appellant filed a timely *pro se* notice of appeal from the denial of his second PCRA petition, arguing, *inter alia*, that "his notice of appeal from the denial of his first PCRA petition was improperly rejected by the Clerk of Courts…." *Id.* at 3. We agreed with this argument and, accordingly, we reinstated Appellant's timely appeal from the April 8, 2010 order denying his first PCRA petition. *Id.* at 5. We also directed that counsel be appointed to represent Appellant on appeal. *Id.*

Upon remand, counsel was appointed to represent Appellant in the instant appeal. Counsel filed a timely concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Herein, Appellant raises the following five issues for our review:

> A. Whether [] Appellant was denied due process and effective assistance of counsel by both trial and appellate counsel where there was a failure to object to and/or request that the jury's partial verdict be recorded before the trial court terminated deliberations and seated the already dismissed alternate juror to begin new deliberations?
>
> B. Whether [t]rial counsel was ineffective for failing to introduce character witnesses who were willing and available to testify at trial?
>
> C. Whether PCRA counsel was ineffective for failing to raise trial and appellate counsel ineffectiveness for failing to argue and preserve that the evidence was insufficient as a matter of law to convict [] Appellant of the crimes charged?
>
> D. Whether [a]ppellate and trial counsel were ineffective for failing to properly present and argue challenges to the discretionary aspects of sentencing[?] [] Appellant also argues

- 3 -

that PCRA counsel was ineffective for failing to preserve this issue in the PCRA [p]etition.

E. Whether PCRA [c]ounsel was ineffective for failing to raise trial counsel's ineffectiveness for failing to make proper objections with regard to Detective Brooks'[] testimony at trial and failing to object to Lieutenant Harnett's testimony at trial which violated [] Appellant's 6th Amendment right and its like provision?

Appellant's Brief at 6.

To begin, we note that "[t]his Court's standard of review from the grant or denial of post-conviction relief is limited to examining whether the lower court's determination is supported by the evidence of record and whether it is free of legal error." *Commonwealth v. Morales*, 701 A.2d 516, 520 (Pa. 1997) (citing *Commonwealth v. Travaglia*, 661 A.2d 352, 356 n.4 (Pa. 1995)). Where, as here, a petitioner claims that he received ineffective assistance of counsel, our Supreme Court has stated that:

> [A] PCRA petitioner will be granted relief only when he proves, by a preponderance of the evidence, that his conviction or sentence resulted from the "[i]neffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." Generally, counsel's performance is presumed to be constitutionally adequate, and counsel will only be deemed ineffective upon a sufficient showing by the petitioner. To obtain relief, a petitioner must demonstrate that counsel's performance was deficient and that the deficiency prejudiced the petitioner. A petitioner establishes prejudice when he demonstrates "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." … [A] properly pled claim of ineffectiveness posits that: (1) the underlying legal issue has arguable merit; (2) counsel's actions lacked an objective reasonable basis; and (3) actual prejudice befell the petitioner from counsel's act or omission.

*Commonwealth v. Johnson*, 966 A.2d 523, 532-33 (Pa. 2009) (citations omitted).

In Appellant's first issue, he argues that his trial counsel was ineffective for not appropriately objecting when the trial court seated an alternate juror after jury deliberations had begun. The following facts provide the pertinent background of Appellant's claim.

On April 11, 2003, after the jury had retired to deliberate its verdict, the jurors sent a note to the court indicating that they had reached an agreement regarding some of the charges, but were at an impasse on others. Appellant's counsel moved for a mistrial. N.T. Trial, 4/11/03, at 4. The court denied that motion, instead instructing the jury to continue to deliberate. *Id.* at 7. Immediately after providing this instruction, the court recessed for the weekend and informed jurors that they would "return to deliberate Monday morning…." *Id.*

When the trial commenced on Monday, April 14, 2003, one of the jurors was absent due to illness. N.T. Trial, 4/14/03, at 3. The court's staff could not reach the juror to ascertain if or when she would be able to return to court. *Id.* at 3, 5. Appellant's counsel once again moved for a mistrial. *Id.* at 8. The court denied that motion "given the length of this trial and the time involved…." *Id.* at 9. The court then stated that it was going to substitute an alternate juror, to which Appellant's counsel objected. *Id.* at

9-10. The court overruled that objection and, when the jury reentered the courtroom, the court provided the following instruction:

> The Court: Just so you have an understanding of the delay today, as you're aware by now, a substitution had to be made because one of your number fell ill so we had to make a substitution. What that means is that at this time you are to disregard your previous deliberations and you are to start from the beginning again with the new juror, the alternate that's been substituted for juror number seven. So you are to disregard and begin anew with regard to your deliberations.
>
> Again, I instruct you that … in order to return a verdict, each juror must agree. Your verdict must be unanimous. A majority vote is not permissible. You as jurors have a duty to consult with one another and deliberate with a view towards reaching a unanimous agreement if it can be done without violence to your individual judgment. That is to say, each juror must decide the case for himself or herself but only after an impartial consideration of the evidence with his and her fellow jurors. In the course of such deliberations, the jurors should not hesitate to reexamine his or her own views and to change his or her opinion if convinced that it is erroneous, but no juror should surrender his or her honest convictions as to the weight or effect of his [opinion] solely because of the opinion of his or her fellow jurors or for the mere purpose of returning a unanimous verdict. With that, I will send you to your deliberations.

*Id.* at 10-12. Appellant's counsel did not lodge an objection to this charge, and the jury, with the alternate juror included, retired to deliberate. *Id.* at 2.

On April 15, 2003, the jury once again sent a note to the court indicating that it had reached a verdict on certain charges, but was deadlocked on others. N.T. Trial, 4/15/03, at 3. Appellant's counsel once again moved for a mistrial. *Id.* However, the court denied that motion and instructed the jury to continue to deliberate. *Id.* at 6. On April 16, 2003,

- 6 -

the jury asked the court to provide further instructions regarding the "definition of circumstantial evidence and the weight a juror can assign to evidence[,]" and additional instructions "on either believing or disregarding a witness's testimony." N.T. Trial, 4/16/03, at 3. The trial court provided the jury with instructions regarding these two issues and the jury resumed its deliberations. *Id.* at 3-12. That same day, the jury returned a verdict of guilty on the charges of arson, criminal conspiracy, and multiple counts of aggravated assault.

In support of his assertion that counsel did not lodge an appropriate objection to the court's conduct in seating an alternate juror, Appellant relies on the version of Pa.R.Crim.P. 645 that was in effect at the time of his trial, which stated that alternate jurors must be discharged before the jury retired to consider its verdict. Appellant also relies heavily on ***Commonwealth v. Saunders***, 686 A.2d 25 (Pa. Super. 1996). In ***Saunders***, the appellant's original jury began deliberations on Friday and then retired for the weekend. *Id.* at 26. On Monday morning, a juror called the court and informed it that she was ill and would not be able to return to court until the end of the week. *Id.* In order to avoid a mistrial, the court replaced the sick juror with an alternate and instructed the remaining jurors to advise the alternate of "exactly what went on in [their] deliberations so far." *Id.* at 26-27, 29-30. Two hours later, the jury returned with a verdict. *Id.* at 27.

On appeal, our Court held that under the plain language of Rule 645(B) (which was derived from Pa.R.Crim.P. 1108(a), to which ***Saunders***

refers), "there is no authorization in Pennsylvania for a trial court to replace a principal juror after deliberations have begun." **Saunders**, 686 A.2d at 27. Consequently, we declared that "where the trial court has substituted an alternate juror after deliberations have begun, there is a presumption of prejudice to the defendant." **Id.** at 28.

However, we went on in **Saunders** to hold that this presumption may be rebutted, but only with "evidence which establishes that sufficient protective measures were taken to insure the integrity of the jury function." **Id.** In assessing what "measures need [to] be taken" in this regard, we stated:

> While this question has no precise answer, we are convinced that its solution begins with the trial court, prior to impaneling the alternate juror, extensively questioning the alternate and remaining jurors. The trial court must insure that [the] alternate has not been exposed to any improper outside influences and that the remaining regular jurors are able to begin their deliberations anew. These are fundamental consideration that can not [*sic*] be ignored.
>
> Further, after questioning the jurors, the trial court's instructions to the recomposed jury are of the uppermost importance. These instructions are the linchpin to securing the uprightness of the jury's verdict. First, the recomposed jury must be informed that the discharge of the original juror "was entirely personal and had nothing to do with the discharged juror's views on the case or the juror's relationship with fellow jurors." 88 A.L.R.4th 711, § 21a (citing **Commonwealth v. Connor**, 392 Mass. 838, 467 N.E.2d 1340 (1984)). This charge eliminates any impression among the remaining jurors that the discharged member's views on the case were improper and that they risk removal for having similar beliefs.
>
> Next, the recomposed jury must be directed to begin deliberations anew. As noted by the Supreme Court of California:

> [D]eliberations must begin anew when a substitution is made after final submission to the jury. This will insure that each of the 12 jurors reaching the verdict has fully participated in the deliberations, just as each had observed and heard all proceedings in the case.... [T]he court [must] instruct the jury to set aside and disregard all past deliberations and begin deliberating anew. The jury should be further advised that ... the law grants to the People and to the defendant the right to a verdict reached only after full participation of the 12 jurors who ultimately return a verdict; that this right may only be assured if the jury begins deliberations again from the beginning; and that each remaining original juror must set aside and disregard the earlier deliberations as if they had not been had.

> [**People v.**] **Collins**, 552 P.2d [742,] 746–47 [Cal. 1976)]. These instructions serve to "eliminate the impact of the influence of the excused juror, and [allow the regular jurors to] consider the evidence in the context of full and complete deliberations with the new juror." [**State v.**] **Lipsky**, 395 A.2d [555,] 558 [(N.J. Super. 1978)].

*Id.* at 29.[1]   Because the trial court in **Saunders** had instructed the jury to

essentially "fill in" the alternate juror, rather than begin deliberations anew,

_____

[1] In 2013, Rule 645 was amended to add subpart (C), which mirrors the colloquy requirements set forth in **Saunders**.  That section reads:

> (C) After the jury has retired to consider its verdict, a principal juror who becomes unable to perform his or her duties or is disqualified may be replaced with a retained alternate juror only if the trial judge is satisfied that the proper jury function is not harmed by the replacement. To ensure this, the trial judge shall:

> (1) colloquy the alternate juror on the record that the alternate juror has not been exposed to any improper influences; and

> (2) once the jury is reconstituted following the replacement of the principal juror by the alternate juror, colloquy and instruct the reconstituted jury on the record that:

*(Footnote Continued Next Page)*

and because "a query of the alternate and remaining principal jurors never took place[,]" we vacated the appellant's judgment of sentence and remanded for a new trial. *Id.* at 29.

While the facts of this case closely mirror ***Saunders***, we acknowledge that, here, the trial court correctly instructed the jury to begin deliberations anew. We also will liberally construe the court's informing the jury that the absent juror "fell ill" as sufficient to satisfy ***Saunders*** requirement that the jury be informed that "the discharge of the original juror 'was entirely personal and had nothing to do with the discharged juror's views on the case or the juror's relationship with fellow jurors.'" *Id.* at 29.

Nevertheless, the fact that the trial court satisfied two of the ***Saunders*** prongs cannot cure the prejudice caused to Appellant where the record reflects that the court did not "extensively question[] the alternate and remaining jurors" to ensure "that [the] alternate has not been exposed to any improper outside influences and that the remaining regular jurors are

*(Footnote Continued)* ————————

> (a) the jurors understand that the reason the discharged juror was being replaced has nothing to do with the discharged juror's views on the case; and
>
> (b) the reconstituted jury understands that they must set aside and disregard all past deliberations and begin deliberations anew so as to eliminate the influence of the excused juror and so that the reconstituted jury will consider the evidence in the context of full and complete deliberations with the new juror.

Pa.R.Crim.P. 645(C).

able to begin their deliberations anew." *Id.* Because the court did not satisfy these requirements, we agree with Appellant that counsel did not lodge an appropriate objection to the seating of an alternate juror. Admittedly, counsel did object when the court indicated it was going to substitute the alternate. However, after the court provided an instruction that was inadequate under the dictates of *Saunders*, counsel should have objected on this precise basis to allow the court the opportunity to correct its charge and cure the prejudice caused to Appellant. Counsel could have had no reasonable basis for failing to do so under the clear dictates of *Saunders* and the version of Rule 645(B) in effect at the time of Appellant's trial.

For these reasons, we are compelled to agree with Appellant's claim that his trial counsel acted ineffectively in responding to the court's decision to seat an alternate juror after deliberations were underway.[2] Accordingly,

_____

[2] We note that in rejecting this claim of ineffectiveness, the PCRA court concluded that the trial court's instruction to the jury to "start from the beginning again with the new juror" satisfied "the dictate of *Commonwealth v. Feliciano*, [884 A.2d 901 (Pa. Super. 2005)]." PCRA Court Opinion, 7/11/13, at 7. The court's reliance on *Feliciano* is misplaced. In that case, the trial court granted permission for a juror to leave deliberations for a short period to smoke a cigarette. *Id.* at 903. The appellant claimed that because the trial court did not instruct the jury to suspend deliberations until the juror returned, the case was comparable to *Saunders* and a presumption of prejudice arose. *Id.* We disagreed, stating, "[w]e are not persuaded that this case is at all like those where an alternate juror has been substituted after deliberations began." *Id.* at 903. Because the facts of the instant case are analogous to *Saunders*, and are clearly distinct from *Feliciano*, the PCRA court's reliance on *Feliciano* is erroneous.

we vacate the court's April 8, 2010 order denying Appellant's PCRA petition and remand for a new trial. In light of our disposition, we need not address Appellant's remaining issues.

Order vacated. Case remanded. Jurisdiction relinquished. Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 9/12/2014