J-S01043-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JUAN ALBERTO MARTINEZ | : | |
| | : | |
| Appellant | : | No. 1507 MDA 2018 |

Appeal from the Judgment of Sentence Entered August 6, 2018
In the Court of Common Pleas of Lackawanna County Criminal Division at
No(s):  CP-35-CR-0001858-2017

BEFORE:  PANELLA, P.J., MURRAY, J., and PELLEGRINI, J.[*]

MEMORANDUM BY PELLEGRINI, J.:                **FILED FEBRUARY 19, 2019**

Juan Alberto Martinez (Martinez) appeals from the judgment of sentence entered in the Court of Common Pleas of Lackawanna County (trial court). Specifically, Martinez challenges the dismissal of a juror and the denial of his motion for a mistrial.  For the following reasons, we affirm.

We take the factual and procedural history of this matter from our independent review of the certified record.  In January 2018, a jury was empaneled, including twelve jurors and two alternates to hear charges the Commonwealth filed against Martinez charging him with sexual assault of his paramour's minor daughters.  At the conclusion of the evidence, the jury began deliberating and the two alternates were sequestered and reminded that they remained bound by the jury instructions.  Approximately six hours

_____

[*] Retired Senior Judge assigned to the Superior Court.

into deliberation, the jury foreperson sent a note to the court that several members of the jury believed that Juror 10 was incompetent.

The trial court conducted individual *voir dire* of the jury members, including Juror 10. Next, the court questioned Alternate Juror 1 about his ability to serve and understanding of the court's instructions, including not discussing the case during sequestration. Alternate Juror 1 assured the court of his ability and that he had followed the instructions. At the conclusion of the questioning, the Commonwealth moved to remove Juror 10. Over defense counsel's objection, the trial court dismissed Juror 10 and seated Alternate Juror 1 to begin deliberations anew. Defense counsel did not make a motion at that time. Hours later, when the jury returned to deliver its verdict, defense counsel moved for a mistrial, which the court denied.

The jury convicted Martinez of one count each of Aggravated Indecent Assault of a Child and Terroristic Threats and two counts each of Indecent Assault of a Victim Less than Thirteen Years of Age and Corruption of Minors-Defendant Age Eighteen or Above.[1] On August 6, 2018, the court sentenced him to an aggregate term of not less than nine nor more than twenty-two years' incarceration. Martinez timely appealed challenging Juror 10's dismissal and the court's denial of his motion for a mistrial.

---

[1] 18 Pa.C.S. §§ 3125(b), 2706(a)(1), 3126(a)(7), and 6301(a)(1), respectively. The jury was unable to reach a verdict on a count of Rape of a Child, 18 Pa.C.S. § 3121(c). The Commonwealth *nolle prossed* the charge at the time of sentencing.

# I.

Martinez contends that the trial court erred in dismissing Juror 10 after deliberations had begun because in his *voir dire*, Juror 10 stated that he was unable to render a verdict, not necessarily because of a personal inability to do so, but because he believed the evidence was not sufficient to establish his guilt.  In support of his position, he relies on the highlighted following responses given by Juror 10 when questioned by the trial court:

> THE COURT: My inquiry is are all the jurors able to fulfill their obligation to follow my instructions and serve as fair and impartial jurors.  Do you have any concerns about you or any of the other jurors?
>
> JUROR NO. 10: As far as being impartial you mean or?
>
> THE COURT: Yeah, or even having the ability to serve?
>
> JUROR NO. 10: No.  I have doubts for myself.
>
> THE COURT: About your ability to serve or doubts about the case because they are two different questions, right, doubts about whether the Commonwealth has proven their case is one thing.  Doubts about your ability to serve as a juror is another.  So you say it's what?
>
> JUROR NO. 10: **I don't feel that they gave us enough information to actually make an informed decision.**
>
> THE COURT: Okay.
>
> JUROR NO. 10: That's about all I could say.
>
> THE COURT: Okay.  Do you have any other concerns that you want to bring to my attention?
>
> JUROR NO. 10: Just that I'm a nervous wreck from this whole thing.

THE COURT: Okay. I know. It's not easy to sit as a juror in a case, in a case such as this.

JUROR NO. 10: If I had known the gravity of what—let's just say if I knew what this was going to be all about, I would have thought of some way to get out of it.

THE COURT: Okay. And why, just because of emotional or?

JUROR NO. 10: The emotional, my nerves are shot. My health isn't that great to start out with. I'm just a physical wreck right now.

THE COURT: Okay. I'm sorry to hear that, sir. **But your position is, is that you're able to serve despite your emotions and your nervousness as a juror but that the Commonwealth in your estimation has not presented enough evidence; is that correct?**

JUROR NO. 10: **Yes.**

(Juror No. 10 exits chambers) (Juror No. 10 returns to chambers)

THE COURT: I want to follow up on one of the statements that you made. So I'm sorry to have you go all the way down the hall and have you come back.

JUROR NO. 10: It's okay.

THE COURT: One of the statements that you made, made me think of a follow up question. When you said that you were talking about you're nervous and that if you had known about the gravity of the case at the outset you would have— I believe you said you would have made up something just to get out of the jury, which people do. We all know that. Is that what you said?

JUROR NO. 10: Yeah, basically.

THE COURT: Okay. Is it that the—is it the type of case that is causing you concern? Do you have any concerns in your deliberations?

JUROR NO. 10: Do I have concerns? How do you mean?

THE COURT: Is it the type of case that is causing you concern?

JUROR NO. 10: The type of case **and the lack of evidence**.

THE COURT: Okay. So you don't feel that you have any difficulty in deliberating and making up your own mind in this case?

JUROR NO. 10: I have trouble making up my mind.

THE COURT: In this case? **Are you—do you feel that you have any difficulty in deliberating in this case in making up your own mind?**

JUROR NO. 10: **No.**

THE COURT: So, sir, I have another question for you. And I just want to make sure I'm getting to the—I think I understand what you're saying**. Are you able to sit in judgment of another person?**

JUROR NO. 10: **If I had more information I would say yes.**

THE COURT: But I mean like in general, is that a personal—is that not something that not necessarily relates to this case? Some people have a religious, moral, or personal conviction that they have a difficult time sitting in judgment of other people. Is that something that you're experiencing?

JUROR NO. 10: Yes, I believe it is.

THE COURT: Why do you say that?

JUROR NO. 10: I just don't trust people.

THE COURT: In general you mean?

JUROR NO. 10: Yes.

THE COURT: So in a criminal case you would have difficulty deliberating and reaching a verdict in general?

JUROR NO. 10: My brain feels like scrambled.

ATTY. VANSTON: Judge, I'm going to object to this line of questions.

THE COURT: Your objection is noted. Do you have—so—.

JUROR NO. 10: **I'm finding it hard to convict someone of something when I don't have enough information for me to make an informed decision. I don't know how else to put it.**

THE COURT: Okay.

JUROR NO. 10: **I just don't feel that we were given enough information don't know what else to say.**

(N.T. Trial, 1/31/18, at 48-55) (emphasis added)

Martinez contends that because Juror 10 consistently stated that he had the ability to serve and could not convict him because there was not sufficient information, the trial court abused its discretion in removing Juror 10 from the jury.

However, what Martinez ignores is that Juror 10 made other statements that questioned his ability to serve. He stated that he had doubts about his ability to serve, and if he "had known the gravity of what . . . this was going to be all about, [he] would have thought of some way to get out of it." (*Id.* at 51; *see id.* at 50). He informed the court that his "nerves [were] shot[,]" and that he was "just a physical wreck." (*Id.* at 51). He exhibited the same inconsistent behavior the jury panel had reported to the court. Specifically, the court asked him if would "have any difficulty in deliberating and making up [his] own mind in the case[,]" to which he responded, "I have trouble making up my mind." (*Id.* at 53). Immediately thereafter, when the court

- 6 -

asked him the exact same question again, he responded that he would **not** have difficulty deliberating and making up his own mind in the case. (*See id.*). He stated that he believed he had something like "a religious, moral, or personal conviction" that made it difficult to sit in judgment of another person. (*Id.* at 54). Finally, when asked if, in general, he would have difficulty deliberating and reaching a verdict, Juror 10 responded only that his brain felt "scrambled." (*Id.* at 55).

Also, in the trial court questioning of other members of the jury, nine of them expressed concern about Juror 10's competency because he appeared confused and unable to apply the law to the facts. (*See id.* at 20-48, 55-62). For example, Juror 3 stated that Juror 10 was "just going back and forth. Last night was one answer. Today is another answer. And he's not really giving a reason why[.]" (*Id.* at 29). Juror "question[ed] [Juror 10's] maturity to put together thoughts into a decision[]" because "[his] rationale or the reason given . . . [are] a mismatch." (*Id.* at 32-34). Juror 6 told the court, "the questions that are asked of [Juror 10] are not answered consistently[,] even when [the jury members] repeat the answer that he just provided." (*Id.* at 40). Juror 9 observed that Juror 10 was "[s]winging back and forth, changing . . . . [H]is words were he does not know what to believe. And by stating that, he does not know how to make a decision or is unable to make a decision." (*Id.* at 47-48). Juror 12 reported that Juror 10 stated, "I should have gotten out of this because I can't reach a decision that could lead to a punishment of the individual." (*Id.* at 60). Only Juror 8 said "[y]es and no"

when asked whether she shared the same concerns as the rest of the jury panel, and stated that she thought the other jurors were frustrated because they wanted Juror 10 to change his mind. (*See id.* at 45).

Based on the foregoing, we conclude that the court did not abuse its discretion in dismissing Juror 10. Before deciding to replace the juror, the court weighed the totality of the circumstances, including the jury panel's individual testimony; Juror 10's credibility and demeanor; and his "conflicting, confusing, and contradictory statements." (Trial Court Opinion, 10/18/18, at 18).

Then, the trial court took proper measures to ensure the integrity of the jury panel when it substituted him with Alternate Juror 1. "[I]n cases where the trial court has substituted an alternate juror after deliberations have begun, there is a presumption of prejudice to the defendant. . . . [T]his presumption may only be rebutted by evidence which establishes that sufficient protective measures were taken to insure the integrity of the jury function." *Commonwealth v. Saunders*, 686 A.2d 25, 28 (Pa. Super. 1996) (citations omitted). These measures include two steps: "[T]he recomposed jury must be informed that the discharge of the original juror was entirely personal and had nothing to do with the discharged juror's views on the case or the juror's relationship with fellow jurors." *Id.* at 29 (citation and internal quotation marks omitted). "Next, the recomposed jury must be directed to begin deliberations anew." *Id.*

Here, the trial court questioned Alternate Juror 1, who confirmed: he understood the jury charge and had followed the court's instruction not to discuss the weight, sufficiency or believability of the evidence with Alternate Juror 2; he was not exposed to any of the parties; and he had not followed media coverage or performed independent research about the case. (**See id.** at 69-70). Defense counsel then stated that they did not have any questions. (**See id.** at 70).

When it excused Juror 10, advised the jury of the dismissal, and that Alternate Juror 1 would replace him, the trial court told the jury that Juror 10's discharge "has absolutely nothing to do with his views on the case." (**Id.** at 74). Additionally, the court instructed the panel members that they were to begin deliberations anew with Alternate Juror 1 without consideration of anything they had discussed previously. (**See id.**).

Because we discern no palpable abuse of discretion, we decline to reverse the trial court's decision. **See Treiber**, **supra** at 31 ("Absent a palpable abuse of [] discretion, the court's determination [to dismiss a juror] will not be reversed.").

## II.

Next, Martinez argues that the trial court erred in denying his motion for a mistrial based on its discharge of Juror 10 and substitution of Alternate Juror 1.[2] (**See** Martinez's Brief, at 12-16).

Pennsylvania Rule of Criminal Procedure 605(B) provides, in pertinent part, "When an event prejudicial to the defendant occurs during trial only the defendant may move for a mistrial; the motion shall be made when the event is disclosed." Pa.R.Crim.P. 605(B); **see also Commonwealth v. Brinkley**, 480 A.2d 980, 985 (Pa. 1984) (trial court properly denied motion for mistrial made day after allegedly prejudicial event). "Even where a defendant objects . . . the failure to request a remedy such as a mistrial . . . is sufficient to constitute waiver." **Commonwealth v. Strunk**, 953 A.2d 577, 579 (Pa. Super. 2008) (citation omitted).

In this case, although defense counsel objected to the Commonwealth's motion to remove Juror 10, he failed to move for a mistrial when the court actually did excuse the juror and replace him with Alternate Juror 1. (**See** N.T. Trial, at 62-69, 71-74). Instead, he only did so later when the jury notified the court that it had reached a verdict. (**See id.** at 77). The trial court denied the motion due to its untimeliness. (**See id.** at 77-78).

---

[2] We review a trial court's denial of a mistrial for an abuse of discretion. **See Commonwealth v. Boczkowski**, 846 A.2d 75, 94 (Pa. 2004).

We discern no error. Martinez failed to move for a mistrial "when the event [was] disclosed[,]" *i.e.*, when the court dismissed Juror 10 and empaneled Alternate Juror 1. Therefore, the court properly denied his motion as untimely. *See* Pa.R.Crim.P. 605(B); *Brinkley*, *supra* at 985; *Strunk*, *supra* at 579. We affirm Martinez's judgment of sentence.[3]

Judgment of sentence affirmed.

President Judge Panella joins in the memorandum.

Judge Murray concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/19/2019

---

[3] Even had the motion been timely, it would not have merited relief where the trial court properly exercised its discretion in excusing Juror 10 and took sufficient measures to ensure the integrity of the jury process. *See Boczkowski*, *supra* at 94 ("A trial court need only grant a mistrial where the alleged prejudicial event may reasonably be said to deprive the defendant of a fair and impartial trial.") (citation omitted).

- 11 -