J-S26010-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| RONDELL SLAUGHTER, | |
| Appellant | No. 367 EDA 2013 |

Appeal from the PCRA Order April 8, 2010
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0809732-2001

BEFORE: BENDER, P.J.E., SHOGAN, and FITZGERALD,[*] JJ.

MEMORANDUM BY SHOGAN, J.: **FILED JANUARY 25, 2016**

Appellant, Rondell Slaughter, appeals from the April 8, 2010 order denying his first petition for relief filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541-9546. After careful review, we affirm.

In a prior appeal before this Court, we summarized the factual and procedural history of Appellant's case as follows:

> On April 16, 2003, a jury convicted Appellant of arson, criminal conspiracy, and [five] counts of aggravated assault. His convictions stemmed from the February 26, 2001 firebombing of a home in which a drug dealing and prostitution operation was conducted. Six people were wounded in this attack. On June 19, 2003, Appellant was sentenced to an aggregate term of 35 to 70 years' incarceration. On May 19, 2006, this Court affirmed Appellant's judgment of sentence, and [on November 9, 2006,]

---

[*] Former Justice specially assigned to the Superior Court.

our Supreme Court … denied his petition for permission to appeal. ***Commonwealth v. Slaughter***, 903 A.2d 52 (Pa. Super. 2006) (unpublished memorandum), *appeal denied*, 911 A.2d 935 (Pa. 2006). Appellant did not petition for permission to appeal to the United States Supreme Court and, therefore, his judgment of sentence became final on [February 7, 2007]. ***See Commonwealth v. Owens***, 718 A.2d 330, 331 (Pa. Super. 1998) (under the PCRA, petitioner's judgment of sentence becomes final ninety days after our Supreme Court rejects his or her petition for allowance of appeal since petitioner had ninety additional days to seek review with the United States Supreme Court).

On October 24, 2007, Appellant filed his first *pro se* PCRA petition and counsel was appointed. That petition was denied on April 8, 2010. On April 21, 2010, Appellant filed a second *pro se* PCRA petition….[1] Therein, he alleged ineffective assistance of his trial and appellate counsels. However, prior to the court's ruling on Appellant's second PCRA petition, Appellant attempted to file a *pro se* notice of appeal from the court's April 8, 2010 order denying his *first* petition. That notice of appeal was time stamped as "Received Accepted For Review Only" on May 4, 2010. Therefore, it is clear that Appellant's attempt to file his appeal was timely. ***See*** Pa.R.A.P. 903(a) ([stating] "notice of appeal … shall be filed within 30 days after the entry of the order from which the appeal is taken"). Nevertheless, the Philadelphia County Clerk of Courts rejected Appellant's notice of appeal because his second PCRA petition was still pending before the court.[2]

> [1] Appellant also filed a "Supplemental *Pro Se* Motion for Post Conviction Relief" on April 22, 2010.

> [2] Specifically, in a handwritten note on its "Returned Correspondence" Memorandum received by Appellant, the Clerk of Courts indicated that Appellant's notice of appeal was being returned for the following reason: "On 4-21-10 you filed a new PCRA Petition. You now have to wait until Judge rules on that Petition before you file an appeal. You can only do one at a time." ***See*** Appellant's Exhibit B-1.

On July 8, 2011, the PCRA court denied Appellant's second petition for post conviction relief as untimely….

***Commonwealth v. Slaughter***, 2036 EDA 2011, 62 A.3d 465 (Pa. Super. 2012) (unpublished memorandum at 1-3) ("***Slaughter I***").

Appellant filed a timely, *pro se* notice of appeal from the denial of his second PCRA petition, arguing, *inter alia*, that "his notice of appeal from the denial of his first PCRA petition was improperly rejected by the Clerk of Courts…." ***Slaughter I***, at 3. In ***Slaughter I***, we agreed with Appellant's argument and, accordingly, we reinstated his timely appeal from the April 8, 2010 order denying his first PCRA petition. ***Id.*** at 5. We also directed that counsel be appointed to represent Appellant on appeal. ***Id.***

Upon remand, counsel was appointed to represent Appellant, and Appellant filed a timely concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Appellant's case was assigned to a three-judge panel of this Court. On September 12, 2014, this Court issued a memorandum decision concluding that Appellant's trial counsel was ineffective in failing to appropriately object to the trial court's impaneling of an alternate juror after jury deliberations had begun. ***See Commonwealth v. Slaughter***, No. 367 EDA 2013, \_\_\_A.3d \_\_\_ (Pa. Super. 2014) (unpublished memorandum) ("***Slaughter II***"). The following facts formed the basis for our decision in ***Slaughter II***:

On April 11, 2003, after the jury had retired to deliberate its verdict, the jurors sent a note to the court indicating that they had reached an agreement regarding some of the charges, but were at an impasse on others. Appellant's counsel moved for a mistrial. N.T. Trial, 4/11/03, at 4. The court denied that motion, instead instructing the jury to continue to deliberate. *Id.* at 7. Immediately after providing this instruction, the court recessed for the weekend and informed jurors that they would "return to deliberate Monday morning…." *Id.*

When the trial commenced on Monday, April 14, 2003, one of the jurors was absent due to illness. N.T. Trial, 4/14/03, at 3. The court's staff could not reach the juror to ascertain if or when she would be able to return to court. *Id.* at 3, 5. Appellant's counsel once again moved for a mistrial. *Id.* at 8. The court denied that motion "given the length of this trial and the time involved…." *Id.* at 9. The court then stated that it was going to substitute an alternate juror, to which Appellant's counsel objected. *Id.* at 9-10. The court overruled that objection and, when the jury reentered the courtroom, the court provided the following instruction:

> The Court: Just so you have an understanding of the delay today, as you're aware by now, a substitution had to be made because one of your number fell ill so we had to make a substitution. What that means is that at this time you are to disregard your previous deliberations and you are to start from the beginning again with the new juror, the alternate that's been substituted for juror number seven. So you are to disregard and begin anew with regard to your deliberations.
>
> Again, I instruct you that … in order to return a verdict, each juror must agree. Your verdict must be unanimous. A majority vote is not permissible. You as jurors have a duty to consult with one another and deliberate with a view towards reaching a unanimous agreement if it can be done without violence to your individual judgment. That is to say, each juror must decide the case for himself or herself but only after an impartial consideration of the evidence with his and her fellow jurors. In the course of such deliberations, the jurors should not

hesitate to reexamine his or her own views and to change his or her opinion if convinced that it is erroneous, but no juror should surrender his or her honest convictions as to the weight or effect of his [opinion] solely because of the opinion of his or her fellow jurors or for the mere purpose of returning a unanimous verdict. With that, I will send you to your deliberations.

*Id.* at 10-12. Appellant's counsel did not lodge an objection to this charge, and the jury, with the alternate juror included, retired to deliberate. *Id.* at 2.

On April 15, 2003, the jury once again sent a note to the court indicating that it had reached a verdict on certain charges, but was deadlocked on others. N.T. Trial, 4/15/03, at 3. Appellant's counsel once again moved for a mistrial. *Id.* However, the court denied that motion and instructed the jury to continue to deliberate. *Id.* at 6. On April 16, 2003, the jury asked the court to provide further instructions regarding the "definition of circumstantial evidence and the weight a juror can assign to evidence[,]" and additional instructions "on either believing or disregarding a witness's testimony." N.T. Trial, 4/16/03, at 3. The trial court provided the jury with instructions regarding these two issues and the jury resumed its deliberations. *Id.* at 3-12. That same day, the jury returned a verdict of guilty on the charges of arson, criminal conspiracy, and multiple counts of aggravated assault.

*Slaughter II*, at 5-7.

In light of these facts, Appellant contended in *Slaughter II* that his trial counsel did not lodge an appropriate objection to the court's conduct in seating an alternate juror. Appellant relied on the version of Pa.R.Crim.P.

645 that was in effect at the time of his trial, which stated that alternate jurors must be discharged before the jury retired to consider its verdict.[1]

Appellant also relied heavily on **Commonwealth v. Saunders**, 686 A.2d 25 (Pa. Super. 1996). In **Saunders**, the appellant's original jury began deliberations on Friday and then retired for the weekend. **Id.** at 26. On Monday morning, a juror informed the court that she was ill and would not be able to return to deliberations until the end of the week. **Id.** In order to avoid a mistrial, the court replaced the sick juror with an alternate, and instructed the remaining jurors to advise the alternate of "exactly what went on in [their] deliberations so far." **Id.** at 26-27, 29-30. Two hours later, the jury returned with a verdict. **Id.** at 27.

On appeal in **Saunders**, our Court held that under the plain language of Rule 645(B) (which was derived from Pa.R.Crim.P. 1108(a), to which **Saunders** refers), "there is no authorization in Pennsylvania for a trial court to replace a principal juror after deliberations have begun." **Saunders**, 686 A.2d at 27. Consequently, we declared that, "where the trial court has substituted an alternate juror after deliberations have begun, there is a presumption of prejudice to the defendant." **Id.** at 28.

However, we also held in **Saunders** that this presumption may be rebutted through "evidence which establishes that sufficient protective

---

[1] Pa.R.Crim.P. 645 was amended on November 19, 2013, and it now states that alternate jurors are to be retained until a verdict is reached.

measures were taken to insure the integrity of the jury function." ***Id.*** In

assessing what "measures need [to] be taken" in this regard, we stated:

> While this question has no precise answer, we are convinced that its solution begins with the trial court, prior to impaneling the alternate juror, extensively questioning the alternate and remaining jurors. The trial court must insure that [the] alternate has not been exposed to any improper outside influences and that the remaining regular jurors are able to begin their deliberations anew. These are fundamental consideration[s] that can not [*sic*] be ignored.
>
> Further, after questioning the jurors, the trial court's instructions to the recomposed jury are of the uppermost importance. These instructions are the linchpin to securing the uprightness of the jury's verdict. First, the recomposed jury must be informed that the discharge of the original juror "was entirely personal and had nothing to do with the discharged juror's views on the case or the juror's relationship with fellow jurors." 88 A.L.R.4th 711, § 21a (citing ***Commonwealth v. Connor***, 392 Mass. 838, 467 N.E.2d 1340 (1984)). This charge eliminates any impression among the remaining jurors that the discharged member's views on the case were improper and that they risk removal for having similar beliefs.
>
> Next, the recomposed jury must be directed to begin deliberations anew. As noted by the Supreme Court of California:
>
>> [D]eliberations must begin anew when a substitution is made after final submission to the jury. This will insure that each of the 12 jurors reaching the verdict has fully participated in the deliberations, just as each had observed and heard all proceedings in the case.... [T]he court [must] instruct the jury to set aside and disregard all past deliberations and begin deliberating anew. The jury should be further advised that ... the law grants to the [p]eople and to the defendant the right to a verdict reached only after full participation of the 12 jurors who ultimately return a verdict; that this right may only be assured if the jury begins deliberations again from the beginning; and that each remaining original juror

must set aside and disregard the earlier deliberations as if they had not been had.

[**People v.**] **Collins**, [17 Cal.3d 687,] 552 P.2d [742,] 746–47 [(1976)]. These instructions serve to "eliminate the impact of the influence of the excused juror, and [allow the regular jurors to] consider the evidence in the context of full and complete deliberations with the new juror." [**State v.**] **Lipsky**, 395 A.2d [555,] 558 [(N.J. Super. 1978)].

*Id.* at 29.[2]  Because the trial court in **Saunders** had instructed the jury to

essentially "fill in" for the alternate juror, rather than begin deliberations

_____

[2] As noted above, Rule 645 was amended in 2013.  The 2013 amendments added subpart (C), which mirrors the colloquy requirements set forth in **Saunders**.  That section reads:

(C) After the jury has retired to consider its verdict, a principal juror who becomes unable to perform his or her duties or is disqualified may be replaced with a retained alternate juror only if the trial judge is satisfied that the proper jury function is not harmed by the replacement. To ensure this, the trial judge shall:

(1) colloquy the alternate juror on the record that the alternate juror has not been exposed to any improper influences; and

(2) once the jury is reconstituted following the replacement of the principal juror by the alternate juror, colloquy and instruct the reconstituted jury on the record that:

(a) the jurors understand that the reason the discharged juror was being replaced has nothing to do with the discharged juror's views on the case; and

(b) the reconstituted jury understands that they must set aside and disregard all past deliberations and begin deliberations anew so as to eliminate the influence of the excused juror and so that the reconstituted jury will

*(Footnote Continued Next Page)*

anew, and because "a query of the alternate and remaining principal jurors never took place[,]" we vacated the appellant's judgment of sentence and remanded for a new trial. *Id.* at 29.

In *Slaughter II*, we concluded that Appellant had proven that his trial counsel was ineffective and reasoned as follows:

> While the facts of this case closely mirror *Saunders*, we acknowledge that, here, the trial court correctly instructed the jury to begin deliberations anew. We also will liberally construe the court's informing the jury that the absent juror "fell ill" as sufficient to satisfy [the] *Saunders* requirement that the jury be informed that "the discharge of the original juror 'was entirely personal and had nothing to do with the discharged juror's views on the case or the juror's relationship with fellow jurors.'" *Id.* at 29.
>
> Nevertheless, the fact that the trial court satisfied two of the *Saunders* prongs cannot cure the prejudice caused to Appellant where the record reflects that the court did not "extensively question[] the alternate and remaining jurors" to ensure "that [the] alternate has not been exposed to any improper outside influences and that the remaining regular jurors [were] able to begin their deliberations anew." *Id.* Because the court did not satisfy these requirements, we agree with Appellant that counsel did not lodge an appropriate objection to the seating of an alternate juror. Admittedly, counsel did object when the court indicated it was going to substitute the alternate. However, after the court provided an instruction that was inadequate under the dictates of *Saunders*, counsel should have objected on this precise basis to allow the court the opportunity to correct its charge and cure the prejudice caused to Appellant. Counsel could have had no reasonable basis

_(Footnote Continued)_ ————————

> consider the evidence in the context of full and complete deliberations with the new juror.

Pa.R.Crim.P. 645(C).

- 9 -

for failing to do so under the clear dictates of **Saunders** and the version of Rule 645(B) in effect at the time of Appellant's trial.

**Slaughter II** at 10-11. Accordingly, in **Slaughter II**, we vacated the PCRA court's order denying Appellant's petition and remanded for a new trial. **Id.** at 12.

The Commonwealth filed a timely petition for allowance of appeal to our Supreme Court, which was granted. On July 28, 2015, the Supreme Court issued a *per curiam* order stating that this Court "improperly evaluated [Appellant's] ineffectiveness of counsel claim under the harmless error standard applicable on direct appeal…." Supreme Court Order, 7/28/15. Consequently, the Supreme Court vacated our decision in **Slaughter II** and remanded for us to "reevaluate [Appellant's] ineffectiveness claim under the **Pierce/Strickland**[3] standard requiring a showing of actual prejudice…." **Id.** We now do so herein.

Recently, in **Commonwealth v. Spotz**, 84 A.3d 294 (Pa. 2014), the Supreme Court reiterated the difference between the harmless error and actual prejudice standards, as follows:

> [A] defendant [raising a claim of ineffective assistance of counsel] is required to show actual prejudice; that is, that counsel's ineffectiveness was of such magnitude that it 'could have reasonably had an adverse effect on the outcome of the proceedings.' **Pierce**, 515 Pa. at 162, 527 A.2d at

---

[3] **Strickland v. Washington**, 466 U.S. 668 (1984); **Commonwealth v. Pierce**, 527 A.2d 973 (Pa. 1987).

- 10 -

977. This standard is different from the harmless error analysis that is typically applied when determining whether the trial court erred in taking or failing to take certain action. The harmless error standard, as set forth by this Court in **Commonwealth v. Story**, 476 Pa. [391], 409, 383 A.2d [155], 164 [(1978)] (citations omitted), states that "[w]henever there is a 'reasonable possibility' that an error 'might have contributed to the conviction,' the error is not harmless." This standard, which places the burden on the Commonwealth to show that the error did not contribute to the verdict beyond a reasonable doubt, is a lesser standard than the **Pierce** prejudice standard, which requires the defendant to show that counsel's conduct had an actual adverse effect on the outcome of the proceedings. This distinction appropriately arises from the difference between a direct attack on error occurring at trial and a collateral attack on the stewardship of counsel. In a collateral attack, we first presume that counsel is effective, and that not every error by counsel can or will result in a constitutional violation of a defendant's Sixth Amendment right to counsel. **Pierce, supra.**

**Id.** at 315 (quoting **Commonwealth v. Gribble**, 863 A.2d 455, 472 (Pa. 2004) (emphasis in original)).

As noted above, the remand order from the Supreme Court instructed us to reevaluate Appellant's ineffectiveness claim under the **Pierce/Strickland** standard, which requires a showing of actual prejudice. Here, Appellant avers that counsel was ineffective in failing "to object to and/or request that the jury's partial verdict be recorded before the trial court terminated deliberations and seated the already dismissed alternate juror to begin new deliberations[.]" Appellant's Supplemental Brief at 5. Underlying his claim of ineffectiveness, Appellant baldly asserts that the trial

court's appointment of an alternate juror was prejudicial. However, rather than proving prejudice, Appellant merely advances speculation and assumption in this regard, as follows:

> To replace the juror after the jury had indicated it was deadlocked at least to some of the charges, **indicates that the resulting finding of guilt [occurred] after the juror was replaced. The replacement of the juror negatively effected [sic] the Appellant to his detriment.**
>
> Furthermore, the Saunders case established that there is a presumption of prejudice. The Superior Court in the original Slaughter opinion had already explored this issue and found:
>
> Nevertheless, the fact that the trial court satisfied two of the Saunders prongs cannot cure the prejudice caused to Appellant where the record reflects that the court did not "extensively question[] the alternate and remaining jurors" to ensure "that [the] alternate has not been exposed to any improper outside influences and that the remaining regular jurors are able to begin their deliberations anew." *Id*. Because the court did not satisfy these requirements, we agree with Appellant that counsel did not lodge an appropriate objection to the seating of an alternate juror. See (Opinion, pages 10-11).
>
> **If indeed, the juror had been exposed to outside influences prior to the deliberations beginning anew, it also clearly affected the outcome of the case since the jury entered a finding of guilt.** Since the Appellant has satisfied the prejudice prong along with the other prongs of ineffectiveness, he should be granted a new trial.

Appellant's Supplemental Brief at 15-16 (emphases added).

Appellant's argument ignores the fact that the jury remained deadlocked even after the alternate juror joined in deliberation. N.T., Trial, 4/15/03, at 3-7. It was not until two days after the substitution of the

alternate juror that the jury reached its verdict.[4] This verdict came after the jury informed the trial court it was deadlocked, after the jury requested additional instructions, and after the jury was given further instruction on both circumstantial evidence and how it may weigh the evidence. *Id*. at 7-8; N.T., Trial, 4/16/03, at 3-12. There is no proof for Appellant's position that the initial partial verdict, which was reached by the original jury, was favorable to Appellant, and there is no proof that Appellant was prejudiced. Appellant's argument is merely unsupported speculation.

Moreover, there is no evidence that the alternate juror, or any other juror, was exposed to any outside influence. Thus, again, Appellant proffers mere speculation and fails to establish prejudice.

Accordingly, after careful review, we conclude that while Appellant argues prejudice, he falls short of proving it under the *Pierce/Strickland* standard. As such, we affirm the PCRA court's order.

Order affirmed.

Justice Fitzgerald joins the Memorandum.

P.J.E. Bender files a Dissenting Memorandum.

_____

[4] We note that Appellant makes a blatant misstatement of fact wherein he asserts: "Almost immediately after the replacement of the juror, the jury reached a verdict." Appellant's Supplemental Brief at 14.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>1/25/2016</u>