**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DASHAWN LAQUINN JAMISON | : | |
| | : | |
| Appellant | : | No. 1232 MDA 2023 |

Appeal from the Judgment of Sentence Entered July 24, 2023
In the Court of Common Pleas of York County Criminal Division at No(s):
CP-67-CR-0002709-2022

BEFORE:  OLSON, J., KUNSELMAN, J., and NICHOLS, J.

MEMORANDUM BY OLSON, J.:                   **FILED JANUARY 13, 2025**

Appellant, Dashawn Laquinn Jamison, appeals from the judgment of sentence entered on July 24, 2023, following his jury trial conviction for delivery of a controlled substance (cocaine).[1]  We affirm.

We briefly set forth the facts and procedural history of this case as follows.  On February 4, 2021, three police officers with the York County Drug Task Force conducted a controlled narcotics transaction between a confidential informant (CI) and Appellant.  The police searched the CI prior to the transaction, and he did not have anything on his person.  At an agreed upon location at the corner of Hartley and Clarke Streets in York, Pennsylvania, the officers surveilled and photographed a hand-to-hand exchange inside a silver Chevrolet between the CI and Appellant.  The CI gave Appellant $200.00 in

---

[1]   35 P.S. § 780-113(a)(30).

exchange for a bag of crack cocaine. The police recovered two cellular telephones and $200.00 from Appellant in a search incident to his arrest. On June 24, 2022, the Commonwealth charged Appellant with the aforementioned offense. Appellant proceeded *pro se*. The trial court appointed standby counsel for Appellant in November 2022. Prior to trial Appellant filed a *pro se* omnibus motion, which included, *inter alia*, a request to compel the identity of the CI. Following a hearing on December 21, 2022, the trial court denied relief. At a status hearing held in March 2023, Appellant asserted that he was unable to conduct *pro se* witness interviews from prison, so the trial court appointed an investigator from the York County Office of Conflict Counsel to assist Appellant. At the conclusion of a three-day trial commencing on May 8, 2023, the jury found Appellant guilty of the aforementioned crime. On July 24, 2023, the trial court sentenced Appellant to three to six years of incarceration. This timely, counseled appeal resulted.[2]

---

[2] Appellant filed a timely *pro se* post sentence motion which the trial court denied by order entered on August 8, 2023. Thereafter, Appellant filed a timely *pro se* notice of appeal. After the trial court granted Appellant an extension, Appellant filed a *pro se* concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b) as directed. On October 16, 2023, this Court ordered the trial court to determine whether appellate counsel should be appointed to represent Appellant or Appellant voluntarily wished to continue to proceed *pro se*. The trial court conducted a hearing on November 16, 2023 and Appellant knowingly waived his right to counsel. Appellant requested additional time to file a *pro se* amended Rule 1925(b) statement which the trial court granted. In February 2023, Appellant filed a motion for the reappointment of appellate counsel. The trial court appointed counsel and ordered her to file an amended Rule 1925(b) statement. After the grant of several extensions for various reasons, counsel for Appellant filed a timely
*(Footnote Continued Next Page)*

On appeal, counsel for Appellant presents the following issues[3] for our review:

      I.      Whether the Commonwealth failed to prove every element of the offense of delivery of cocaine[,] specifically[,] whether the evidence was insufficient to prove Appellant delivered the controlled substance [(cocaine)] to the [CI]?

      II.     Whether the verdict was against the greater weight of the evidence?

      III.    Whether the trial court erred when it declined to compel discovery, specifically the CI's identity in violation of Appellant's state and federal due process rights?

      IV.    Whether the trial court erred when it denied Appellant's request to interview potential defense witnesses at York County Prison, but rather directed conflict counsel to secure an investigator to interview said witnesses, in violation of Appellant's right to self-representation?

      V.     Whether the trial court erred when it denied Appellant's request to call different witnesses on the basis that the trial court determined they were not relevant?

         a. Witnesses who knew the CI and heard the CI discussing staging drug buys to save himself from prison;

         b. Laura Brown, a clinical and forensic psychologist, who would have provided testimony on habits, routines, and traits of addicts and to potentially inform the jury the potential mental state of an informant who actively used drugs; and

---

Rule 1925(b) statement on March 19, 2024. On March 26, 2024, the trial court issued an opinion pursuant to Pa.R.A.P. 1925(a).

[3] We have reordered Appellant's issues for ease of discussion and disposition.

c. A corrections officer at York County Prison whose testimony would have cast doubt on the Commonwealth's evidence regarding the search of CI prior to CI's interaction with Appellant. The witness would have testified, in an expert capacity, about how new [inmates] to the prison who were previously searched by York police were found in possession of illegal contraband upon entry to the prison.

VI. Whether the trial court erred when it excused Juror 158, the only black juror, without further inquiring into why the juror stated that they could no longer deliberate during active deliberations?

VII. Whether the trial court erred when it denied Appellant's request for a [b]ill of [p]articulars?

VIII. Whether the Commonwealth committed numerous ***Brady***[4] violations when it withheld [information] that a man named Mr. Robert Huffmaster had the same telephone number that the CI called [in this matter]?

Appellant's Brief at 7-8.

On appeal, Appellant's first seven issues challenge various pretrial and trial rulings. First, Appellant challenges the weight and sufficiency of the evidence presented at trial, arguing that "[t]here [wa]s no evidence that Appellant gave the CI crack cocaine" because "while a detective observed a hand-to-hand exchange, he could not testify as to exactly what was exchanged[.]" ***Id.*** at 17. Appellant further argues that "[t]he CI could have received the drugs [that police later recovered from him] after he was originally searched by" the police and "[i]f Appellant would have had the identity of the CI, Appellant could have cross[-]examined the CI on his

_____

[4] ***Brady v. Maryland***, 373 U.S. 83 (1963).

motives for setting up the controlled sale [or] had previously arranged similar transactions to lessen the CI's [exposure to a] prison sentence[.]" *Id.* at 28; *see also id.* at 34 (Appellant "believed the CI staged the buy and could have retrieved the drugs from either hiding it so the officers who searched him prior to the controlled buy could not find it or [he] picked it up somewhere between the time after the CI was searched and when the CI handed over the drugs after the controlled buy."). Moreover, Appellant suggests there was "at least a reasonable possibility the CI's identity would exonerate him, [] because the CI was known for setting up other individuals for controlled buys[.]" *Id.* at 29. Next, Appellant argues that his right to self-representation was violated when "the trial court actually endorsed hybrid representation when it directed standby counsel to secure a private investigator to investigate any potential defense witnesses, which in turn violated Appellant's right to represent himself *pro se*." *Id.* at 31-32. Appellant also argues that the trial court denied his request to call various witnesses to cast doubt on the CI's credibility and to show that he staged the controlled buy to avoid imprisonment himself. *Id.* at 33-35. Appellant also argues that the trial court failed to take protective measures, specifically failed to extensively question the alternate and remaining jurors, when "Juror #158 explained they could no longer deliberate due to concern for their emotional wellbeing" after one hour of deliberation. *Id.* at 42-43. Finally, Appellant suggests that "the trial court abused its discretion in failing to order the Commonwealth to file a [b]ill of [p]articulars" when Appellant only filed a *pro se* motion for an extension of time "so the

Commonwealth would have time to provide discovery and [b]ill of [p]articulars to him." *Id.* at 45-46.

Regarding sufficiency of the evidence, we adhere to the following standards:

> Because a determination of evidentiary sufficiency presents a question of law, our standard of review is *de novo* and our scope of review is plenary. In reviewing the sufficiency of the evidence, we must determine whether the evidence admitted at trial and all reasonable inferences drawn therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, were sufficient to prove every element of the offense beyond a reasonable doubt. The facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. It is within the province of the fact-finder to determine the weight to be accorded to each witness's testimony and to believe all, part, or none of the evidence. The Commonwealth may sustain its burden of proving every element of the crime by means of wholly circumstantial evidence. Moreover, as an appellate court, we may not re-weigh the evidence and substitute our judgment for that of the fact-finder.

*Commonwealth v. Williams*, 176 A.3d 298, 305–306 (Pa. Super. 2017) (internal citations and quotations omitted).

Moreover, regarding the weight of the evidence:

> The decision to grant or deny a motion for a new trial based upon a claim that the verdict is against the weight of the evidence is within the sound discretion of the trial court. Thus, the function of an appellate court on appeal is to review the trial court's exercise of discretion based upon a review of the record, rather than to consider *de novo* the underlying question of the weight of the evidence.

> An appellate court may not overturn the trial court's decision unless the trial court palpably abused its discretion in ruling on the weight claim. Further, in reviewing a challenge to the weight of the evidence, a verdict will be overturned only if it is so contrary to the evidence as to shock one's sense of justice.

A trial court's determination that a verdict was not against the interest of justice is one of the least assailable reasons for denying a new trial. A verdict is against the weight of the evidence where certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice. We do not reach the underlying question of whether the verdict was, in fact, against the weight of the evidence. Instead, this Court determines whether the trial court abused its discretion in reaching whatever decision it made on the motion.

*Id.* at 312 (internal citations, quotations, brackets and ellipses omitted).

"Our standard of review of claims that a trial court erred in its disposition of a request for disclosure of an informant's identity is confined to abuse of discretion." ***Commonwealth v. Withrow***, 932 A.2d 138, 140 (Pa. Super. 2007) (citation omitted). "Indeed, where the informant was an eyewitness to the transaction in question, the role of the trial judge's discretion is established by rule of court." ***Id.*** *citing* Pa.R.Crim.P. 573(B)(2)(a)(i). We also review the trial court's decision to admit or preclude testamentary evidence for an abuse of discretion. ***Commonwealth v. Cox***, 115 A.3d 333, 336 (Pa. Super. 2015) (*en banc*). "The decision to discharge a juror is within the sound discretion of the trial court and will not be disturbed absent an abuse of that discretion… even after the jury has been empaneled and the juror sworn." ***Commonwealth v. Smith***, 206 A.3d 551, 562 (Pa. Super. 2019). The Superior Court also reviews a trial court's decision regarding a request for a bill of particulars for an abuse of discretion. ***See Commonwealth v. McKnight***, 305 A.3d 582, 589 (Pa. Super. 2023) *citing* Pa.R.Crim.P. 572. "An abuse of discretion is not a mere error in judgment but, rather, involves bias,

ill will, partiality, prejudice, manifest unreasonableness, or misapplication of law." **Cox**, 115 A.3d at 336 (citation omitted).

We have carefully reviewed the certified record, the submissions of the parties, and the thorough Rule 1925(a) opinion issued by the trial court on March 26, 2024. Because the trial court's opinion adequately and accurately addresses Appellant's first seven appellate claims as set forth above, we adopt the trial court's March 26, 2024 opinion as our own. Here, the trial court noted that three police officers were involved in the controlled narcotics purchase between Appellant and the CI. One of the officers specifically saw a hand-to-hand transaction between Appellant and the CI inside a vehicle and the Commonwealth presented photographs of the interaction at trial. The driver of the vehicle, wherein the controlled buy occurred, testified that she observed the CI hand Appellant $200.00. As such, the trial court determined there was sufficient evidence of a drug delivery. The trial court further determined that the jury's verdict did not shock the conscience of the court and, therefore, the verdict was not against the weight of the evidence. We will not usurp that determination. Moreover, the trial court further found that Appellant failed to show that the identity of the CI was material to his defense because there was no reasonable possibility that the CI would exonerate Appellant and the CI was not the only witness to the transaction. Regarding additional trial witnesses, the trial court concluded that Appellant could not interview potential witnesses *pro se* at the prison due to security reasons and because Appellant had a prior conviction for witness intimidation. As such, the trial

court found it was appropriate to order an investigator to meet with witnesses, at Appellant's direction, in preparation for trial. Regarding the removal of a juror, the trial court noted that during deliberation, Juror #158 believed he could no longer participate and asked to be replaced with an alternate. Outside the presence of the remaining jurors, the trial court determined that the juror could not be fair and impartial because he was concerned about his emotional well-being. The trial court replaced him with a sequestered alternate and twice instructed the remaining venire to start deliberations anew. Finally, regarding a bill of particulars, the trial court recognized that Appellant failed to make a timely or formal request pursuant to Pa.R.Crim.P. 572 and the Commonwealth already timely turned over discovery which contained the same information which would have been disclosed in a bill of particulars. On all of these issues, we discern no abuse of discretion and adopt the trial court's decision as our own. The parties are hereafter directed to include a copy of the trial court's March 26, 2024 opinion with all future filings pertaining to our disposition of this appeal.

Finally, Appellant contends that, after trial, he discovered that the telephone number that the CI used to call Appellant in this matter was used in another, unrelated case. Appellant's Brief at 36-38 ("Mr. Robert H[u]ffmaster was also charged with the delivery of crack cocaine and the same aforementioned telephone number was listed in Mr. H[u]ffmaster's discovery."). Appellant alleges that the Commonwealth withheld this information from him in violation of **Brady**, **supra**. He claims that "had

Appellant been privy to this evidence[,] Appellant could have shown the jury that the same telephone number was previously linked to another person thereby creating reasonable doubt of Appellant's guilt." *Id.* at 37. Accordingly, Appellant requests a new trial, or alternatively, for this Court to remand the case for an evidentiary hearing on this matter. *Id.* at 38.

As we have previously determined:

To obtain relief on a claim of after-discovered evidence, the evidence must satisfy a four-prong test:

(1) the evidence could not have been obtained before the conclusion of the trial by reasonable diligence; (2) the evidence is not merely corroborative or cumulative; (3) the evidence will not be used solely for purposes of impeachment; and (4) the evidence is of such a nature and character that a different outcome is likely.

The United States Supreme Court held in *Brady* "that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." This duty to disclose evidence is applicable even where the defendant has not made a request for it. Evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." This rule includes evidence known only to police investigators, but not the prosecutor, who has a duty to learn of any evidence known by others who are acting on behalf of the Commonwealth in the defendant's case.

\*            \*            \*

[Generally, on after-discovered evidence claims presented on direct appeal,] we remand to provide the trial court the opportunity to develop the record and to rule upon [] after-discovered evidence and *Brady* claims in the first instance.

- 10 -

*Commonwealth v. Thomas*, 237 A.3d 1030 (Pa. Super. 2020) (non-precedential decision) (internal citations omitted)[5]; ***see also Commonwealth v. Rivera***, 939 A.2d 355, 358 (Pa. Super. 2007), *citing* Pa.R.Crim.P. 720(C), comment ("[A]fter-discovered evidence discovered during the direct appeal process must be raised promptly during the direct appeal process, and should include a request for a remand to the trial judge."). Here, Appellant presented his after-discovered evidence/**Brady** claim and request for remand promptly on direct appeal. Accordingly, we remand to provide the trial court the first opportunity to develop the record and rule on Appellant's claim in the first instance.

Judgment of sentence affirmed. Case remanded for further proceedings consistent with this memorandum. Jurisdiction relinquished.

Judgment Entered.

_____
Benjamin D. Kohler, Esq.
Prothonotary

Date: 01/13/2025

---

[5] ***See*** Pa.R.A.P. 126(b) (providing that unpublished decisions filed by this Court after May 1, 2019, may be cited for their persuasive value).



**\* B A T C H \***

Defendant-Name:

## Dashawn Laquinn Jamison



**\* M O T I O N – P E T I T I O N – O R D E R \***

**Case Number**



**\* C P – 6 7 – C R – 0 0 0 2 7 0 9 – 2 0 2 2 \***

OTN:

**R 163169-6**

Ness, Harry M.

**Fill in Circle - Queue Minutes to:**

[ ]  Adult-Probation-Q

[ ]  PennDOT-Q

[ ]  SCI-Q

[ ]  YCP-Prision-Q

[ ] **Docketed in CPCMS**   | Date:

[ ]  Scanned Images OK - Verified / QC'd

[ ] **RE-SCAN needed**

Reason:

**RETURN TO RECORDS UNIT**

I attest and certify that as Deputy Clerk of Courts I have properly Serviced and Docketed the documents related to this case action and have verified the completeness and image quality of the scanned documents.

Signature or Stamp - Deputy Clerk of Courts

## Dan Byrnes - York County Clerk of Courts

## IN THE COURT OF COMMON PLEAS OF YORK COUNTY, PENNSYLVANIA
## CRIMINAL DIVISION

COMMONWEALTH OF
PENNSYLVANIA

v.

DASHAWN JAMISON
    Defendant/Appellant

:
:
:
:
:
:
:
:
:

CP-67-CR-2709-2022

*RECEIVED*
By Clerk of Courts at 10:32 am, Mar 26, 2024

## OPINION PURSUANT TO Pa.R.A.P. 1925(a).

AND NOW, this 26th day of March, 2024, upon receipt of notice that an appeal has been filed in this matter, and in consideration of the Statement of Matters Complained of on Appeal, filed *pro se* by Dashawn Jamison ("Appellant"), the undersigned files this statement pursuant to PA.R.A.P. 1925(a).

## RELEVANT FACTUAL AND PROCEDURAL HISTORY

On the afternoon of February 4, 2021, Officers with the York County Drug Task Force conducted a controlled buy between a confidential informant and Appellant. While in the presence of Detective Zachary Pelton ("Detective Pelton"), the confidential informant placed a phone call to a cell phone number listed as 717-318-0931. (N.T., 170-72, May 9, 2023). The individual who answered the phone was identified by the confidential informant as Appellant, and an arrangement was made for the confidential informant to go to an agreed-upon location at the intersection of Hartley and Clarke Street in York, Pennsylvania to purchase crack

1

cocaine. *Id.* at 172. Prior to the controlled buy, Detective Pelton searched the confidential informant and confirmed he did not have any contraband, drugs, or money on his person. *Id.* at 173-74. Next, Detective Pelton provided the confidential informant with $200.00 of controlled funds and drove the confidential informant to West Clarke Avenue.

Prior to arriving at the agreed-upon location for the controlled buy, Detective Pelton let the confidential informant out of his vehicle. *Id.* at 177. Detective Pelton observed the confidential informant walk down Clarke Avenue without stopping or interacting with any other individuals or vehicles. *Id.* at 177-78. When the confidential informant arrived close to the intersection of the agreed-upon location, Detective James McBride of the York County District Attorney's Office ("Detective McBride") began to surveil the confidential informant. *Id.* at 282. At that time, Detective McBride observed a silver Chevy vehicle turn left onto Clark Avenue and subsequently stop. *Id.* Detective McBride observed the confidential informant enter the Chevy through the passenger-side rear door. *Id.* at 282-83. Next, the Chevy travelled west on Clarke Avenue for approximately 10 to 15 yards before Detective McBride lost sight of it. *Id.* at 283.

At the same time, Officer Jeremy Fatland of the York County Regional Police Department ("Officer Fatland") was observing and photographing the Chevy as it turned into a parking lot off West Clarke Avenue near North Hartley

2

Street. *Id.* at 242. The Chevy was subsequently parked in the parking lot directly next to Officer Fatland's vehicle. *Id.* at 243. Officer Fatland witnessed a hand-to-hand transaction between Appellant and the confidential informant inside the Chevy. *Id.* at 250. Subsequently, Detective McBride and Officer Fatland observed the confidential informant exit the Chevy and walk back toward the location where Detective Pelton was waiting for him. *Id.* at 251.

When the confidential informant arrived back to Detective Pelton, he handed Detective Pelton one clear plastic baggy containing suspected crack cocaine. *Id.* at 180. Detective Pelton secured this item in his vehicle and conducted another search of the confidential informant and did not find any other contraband, drugs, or money. *Id.* at 180-81. Detective Pelton field tested the suspected crack cocaine and received a positive reaction. *Id.* at 184. A subsequent test by the Pennsylvania State Police Drug Lab confirmed that the substance was in fact cocaine. *Id.* at 316.

Following the controlled buy, Detective McBride seized two phones from Appellant. *Id.* at 286-87. A data extraction revealed that one of the phones had the number of 717-318-0931. *Id.* at 294.

On June 24, 2022, Appellant was charged by way of Information with one count of Delivery of a Controlled Substance pursuant to 35 P.S. § 780-113(a)(30).

On November 29, 2022, Joshua E. Neiderheiser, Esquire, of the York County Office of Conflict Counsel, was appointed as stand-by counsel for

3

Appellant, who represented himself *pro se* in this case.[1]

On December 21, 2022, a hearing took place on Appellant's *pro se* Omnibus Pretrial Motion. At the hearing, the Court denied Appellant's motion to compel the identity of the confidential informant. (Omnibus Pretrial Mot. Hr'g Tr., 30, Dec. 21, 2022).

On March 23, 2023, a status hearing took place before this Court, at which time Appellant raised concerns about his inability to interview and prepare witnesses for trial while housed in York County Prison. The Court ordered that an investigator from the York County Office of Conflict Counsel meet with Appellant to obtain information for trial. (Status Hr'g Tr., 38, Mar. 23, 2023).

A jury trial took place from May 8, 2023, through May 11, 2023. At the conclusion of trial, the jury found Appellant guilty of the sole count of the Information, Delivery of a Controlled Substance. (N.T., 436, May 11, 2023).

On July 24, 2023, the Court sentenced Appellant to three to six years' incarceration. (Sentencing Hr'g Tr., 4, July 24, 2023).

On August 4, 2023, Appellant filed a Post-Sentence Motion. On August 8, 2023, the Court denied the Motion.

On August 30, 2023, Appellant filed a Notice of Appeal to the Superior

---

[1] Defendant was previously appointed Ronald Jackson, Esquire, of the York County Public Defender's Office. Attorney Jackson was later withdrawn because of a conflict of interest due to the Public Defender's Office's representation of a co-Defendant.

4

Court of Pennsylvania. On the same day, the Court ordered Appellant to file a Statement of Matters Complained of on Appeal Pursuant to Pa.R.A.P. 1925(b).

On September 11, 2023, Appellant filed a Motion for Extension of Time to file a Statement pursuant to 1925(b) due to a delay in the production of necessary transcripts. On September 15, 2023, the Court granted the Motion and directed Appellant to file a Statement within 30 days.

On October 13, 2022, Appellant filed a Statement of Errors Complained of on Appeal Pursuant to Pa.R.A.P. § 1925(b).

On October 16, 2023, the Superior Court of Pennsylvania issued an Order directing the Court to determine Appellant's eligibility for court-appointed counsel and, if eligible, appoint appeal counsel for Appellant.[2]

On October 17, 2023, the Court appointed La Tasha Williams, Esquire, as counsel for Appellant. The Court scheduled a status hearing for November 16, 2023, to determine whether Appellant would proceed with the assistance of counsel or elect to proceed *pro se.*

At the hearing on November 16, 2023, the Court found that Appellant made a knowing, voluntary, and intelligent waiver of counsel. Appellant requested additional time to file a *pro se* supplemental Statement of Matters Complained of

---

[2] The Court did not initially appoint appeal counsel because Appellant did not request counsel and represented himself *pro se* for the duration of this case including trial.

on Appeal pursuant to Pa. R.A.P. 1925(b). The Court granted Appellant's request and ordered that Appellant file a *pro se* supplemental 1925(b) Statement within twenty-one (21) days. (Order Granting Withdrawal of Counsel, Nov. 16, 2023).

On December 5, 2023, Appellant filed a *pro se* Motion for Extension of time to file his supplemental 1925(b) Statement, requesting additional time for the production of necessary transcripts. This Court reviewed the record and confirmed that the transcript which Appellant requested had not been produced or provided to Appellant. Accordingly, this Court granted Appellant's motion and ordered Appellant file his supplemental statement no later than twenty-one (21) days, by December 28, 2023.

On December 26, 2023, Appellant filed a second Motion for extension of time to file his Amended 1925(b) Statement, seeking additional time to procure the transcript of the March 23, 2023, status hearing before Judge Kraft. After confirming that the transcript still had not been produced or provided to Appellant, this Court granted the motion and provided Appellant with twenty-one (21) days to file his Amended 1925(b) Statement, until January 31, 2024. Additionally, the Court attached the transcript of the March 23, 2023, status hearing before Judge Kraft as an exhibit.[3]

---

[3] The transcript for the March 23, 2023, status hearing before Judge Kraft was produced on December 29, 2023, three days after Appellant filed his second motion for extension of time to file an Amended 1925(b) Statement.

6

On February 2, 2024, Appellant filed a Motion for Re-appointment of appeal counsel. Because Appellant is entitled to counsel at every critical stage of a criminal proceeding, including appeal, this Court granted Appellant's motion.[4] U.S. Const. Amend. VI; Pa.Const. Art.1, §9; *Commonwealth v. Rosario,* 635 A.2d 109-10 (Pa. 1993). The Court re-appointed La Tasha Williams, Esquire, as counsel for Appellant, and ordered counsel to file an Amended Concise Statement pursuant to Pa.R.A.P. 1925(b) within 21 days, by February 29, 2024.

On February 29, 2024, Appellant filed a Motion for Extension of Time for Counsel to File a 1925(b) Statement seeking an additional 14 days to review the entire lower court record.

On March 4, 2024, this Court granted Appellant an additional seven (7) days to file its 1925(b) Statement. On March 11, 2024, this Court was informed that due to a delay that occurred during filing, the Order was not received by Appellant's counsel until March 12, 2024. Therefore, on March 13, 2024, this Court granted a final extension of time for Appellant to file its 1925(b) Statement, until March 19, 2024.

---

[4] This Court explained in its Order that if Appellant elects to proceed *pro se* a second time, any further Motions for Re-appointment of Counsel would be denied.

On March 19, 2024, counsel for Appellant filed a Statement of Errors

Complained of on Appeal Pursuant to Pa.R.A.P. 1925(b). Appellant alleges the

following errors on appeal:

I. Whether the evidence was insufficient to prove that Appellant delivered the controlled substance to the confidential informant?

II. Whether the jury's verdict was against the greater weight of the evidence?

III. Whether the Court erred in denying Appellant's motion to compel discovery, specifically the identity of the confidential informant?

IV. Whether the Court improperly denied Appellant's motions to interview potential defense witnesses but rather directed conflict counsel to secure an investigator to interview said witnesses in violation of Appellant's right to self-representation?

V. Whether the Court erred when it denied Appellant's request to call several witnesses on the basis that the witnesses were not relevant?

VI. Whether the Commonwealth violated *Brady* by withholding that another individual had the same telephone number that the confidential informant called in Appellant's case

VII. Whether the Court improperly denied Appellant's request to call Detective Pelton as a rebuttal witness?

VIII. Whether the Court improperly removed Juror no. 158?

IX. Whether the Court erred in failing to order the Commonwealth to produce a Bill of Particulars?

8

(Def.'s Statement of the Errors Complained of on Appeal Pursuant to Pa.R.A.P. 1925(B), Mar. 19, 2024).

## DISCUSSION

### I. Whether the evidence was insufficient to prove that Appellant delivered the controlled substance to the confidential informant?

Appellant asserts the evidence presented at trial was insufficient to prove that Appellant delivered the controlled substance, specifically cocaine, to the confidential informant. (Def.'s Statement of Errors Complained of on Appeal, 1, Mar. 19, 2024). The Court reviews sufficiency claims under the following standard:

> In evaluating a sufficiency claim, the Court must accept the evidence in the light most favorable to the Commonwealth as verdict-winner and in drawing all rational evidentiary inferences, determine whether a sensible jury could have found that each element of the crime was established beyond a reasonable doubt. Additionally, the evidence at trial need not preclude every possibility of innocence, and the fact-finder is free to resolve any doubts regarding a defendant's guilt unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. When evaluating the credibility and weight of the evidence, the fact-finder is free to believe all, part or none of the evidence.

*Commonwealth v. Patterson*, 940 A.2d 493, 500 (Pa. Super. 2007) (citations omitted). To preserve a claim of insufficient evidence for appeal, a defendant must "specify the element or elements upon which the evidence was insufficient" in the

9

defendant's Concise Statement of Matters Complained of on Appeal pursuant to Pa.R.A.P. 1925(b). *Commonwealth v. Smyser*, 195 A.3d 912, 915 (Pa. 2018).

The Court finds the evidence presented at trial sufficient to prove that Appellant delivered cocaine to the confidential informant. To support a conviction for delivery of a controlled substance, the Commonwealth must prove beyond a reasonable doubt that the defendant "knowingly made an actual, constructive, or attempted transfer of a controlled substance to another person without the legal authority to do so." *Commonwealth v. Murphy*, 844 A.2d 1228, 1234 (Pa. 2004). In addition to proving the elements of the offense beyond a reasonable doubt, the Commonwealth must identity the defendant as the perpetrator of the crime. *Smyser*, 195 A.3d at 915. (citing *Commonwealth v. Brooks*, 7 A.3d 852, 857 (Pa. Super. 2010)). However, "direct evidence of identity is, of course, not necessary and a defendant may be convicted solely on circumstantial evidence." *Commonwealth v. Hickman*, 309 A.2d 564, 566 (Pa. 1973).

At trial, the Commonwealth presented direct and circumstantial evidence that Appellant delivered cocaine to the confidential informant. Such evidence includes the testimony of Detective Pelton, who testified that he has served as an officer for the York City Police Department for fifteen years, including assignments with the York County Drug Task Force and the Drug Enforcement Administration, and has investigated "thousands" of drug offenses, and conducted

10

controlled buys "on a daily basis." (N.T., 164-65, May 9, 2023). Detective Pelton testified that he observed the confidential informant arrange the controlled buy by placing a phone call to the Appellant, and that the confidential informant described Appellant and identified him as "D" or "Dashawn." *Id.* at 170-71. Additionally, that Detective Pelton heard a male voice on the phone with the CI. *Id.* at 172. Detective Pelton testified that he drove the confidential informant to the area of West Clarke Avenue and North Hartley Street, and observed the confidential informant walk down the street. *Id.* at 177. Detective McBride testified that he observed the Chevy pull up, pick up the confidential informant, and continue down Clarke Avenue. *Id.* 282. Detective McBride maintained surveillance until he could not see the vehicle any longer, at which time Officer Fatland radioed that he took over surveillance of the vehicle. *Id.* at 285-86.

Officer Fatland testified that he saw the Chevy park and observed the confidential informant enter the back seat of the Chevy, and Appellant seated in the passenger seat. Next, he observed the Appellant move back and forth over the center console and conduct a "hand-to-hand transaction." Additionally, the Commonwealth presented photographs taken by Officer Fatland of Appellant seated in the vehicle at the time of the alleged transaction. Lastly, Detective McBride testified that following the alleged transaction, he picked up surveillance of the confidential informant who handed him a bag of suspected crack cocaine.

11

*Id.* at 180. The Commonwealth presented an expert witness who testified that the substance tested positive for cocaine. *Id.* at 316.

Viewing the evidence in the light most favorable to the Commonwealth as the verdict winner, the Court finds the evidence sufficient to prove that Appellant delivered a controlled substance to the confidential informant beyond a reasonable doubt. *Patterson*, 940 A.2d at 500.

## II. Whether the verdict was against the greater weight of the evidence?

Appellant asserts the jury's verdict was against the weight of the evidence. In criminal proceedings, the credibility of witnesses and weight of evidence lie solely with the trier of fact. *Commonwealth v. Williams*, 854 A.2d 440, 445 (Pa. 2004). "The trier of fact is free to believe all, part, or none of the evidence." *Id.* The jury's verdict will only be overturned "if it is so contrary to the evidence as to shock one's sense of justice." *Commonwealth v. Champney*, 832 A.2d 403, 444 (Pa. 2003) (internal citations omitted).

As stated earlier in this opinion, the Court finds the evidence presented by the Commonwealth sufficient to support Appellant's conviction of delivery of a controlled substance. Accordingly, the Court does not find the jury's verdict contrary to the evidence as to "shock one's sentence of justice." *Champney*, 832 A.2d 444.

**III. Whether the Court erred in denying Appellant's motion to compel discovery, specifically the identity of the confidential informant?**

Appellant asserts the Court violated Appellant's state and federal due process rights when it denied Appellant's motion to compel discovery, specifically, the identity of the confidential informant. (Def.'s Statement of Errors Complained of on Appeal, 1, Mar. 19, 2023). At the Omnibus Pretrial Motion hearing on December 21, 2022, the Court denied Appellant's motion to compel the identity of the confidential informant, finding that this information was immaterial to Appellant's defense. (Omnibus Pretrial Mot. Hr'g Tr., 28-30, Dec. 21, 2022).

The standard of review of claims that a trial court erred in denying a request for disclosure of an informant's identity is confined to abuse of discretion. *Commonwealth v. Washington*, 63 A.3d 797, 801 (Pa. Super 2013). To overcome the Commonwealth's qualified privilege to withhold the identity of a confidential source, a defendant must show "that the information sought is material to the preparation of the defendant and that the request is reasonable." *Commonwealth v. Watson*, 69 A.3d 605, 607-608 (Pa. Super. 2013).

Here, Appellant failed to meet the threshold requirement of materiality. To show that evidence is material, a defendant must demonstrate "that the confidential informant possesses relevant information that will materially aid the defendant in presenting his or her defense and that the information is not obtainable from

13

another source." *Commonwealth v. Ellison*, 213 A.3d 312, 317 (Pa. 2019). The defendant "must demonstrate at least a reasonable possibility the informant's testimony would exonerate him." *Washington*, 63 A.3d at 801. "Only after the defendant shows that the identity of the confidential informant is material to the defense is the trial court required to exercise its discretion to determine whether the information should be revealed by balancing relevant factors, which are initially weighted toward the Commonwealth." *Watson*, 69 A.3d at 608.

The Court must apply a balancing test when determining whether the identity of a confidential informant should be disclosed. The test "initially weighs in favor of maintaining confidentiality of the informant's identity in order to preserve the public's interest in effective law enforcement." *Commonwealth v. Baker*, 946 A.2d 691, 694 (Pa. Super. 2008) (citing *In re R.S.*, 847 A.2d 685, 688 (Pa. Super 2004)). The Supreme Court explained that factors to be considered are "the particular circumstances of each case, taking into consideration the crime crime charged, the possible defenses, the possible significance of the informer's testimony and other relevant factors." *Commonwealth v. Carter*, 233 A.2d 284, 287 (quoting *Roviaro v. United States*, 353 U.S. 53, 60-62 (1957)). For example, when the confidential informant was the *only* eyewitness to the entire transaction aside from law enforcement, the Court found this factor weighed in favor of disclosure. *Commonwealth v. Roebuck*, 681 A.2d 1279, 1284 (Pa. 1996).

14

The Court does not find the confidential informant's identity materially relevant to Appellant's case. Appellant failed to demonstrate a reasonable possibility that the confidential informant's testimony would exonerate Appellant. Detective Pelton testified that, prior to the controlled buy, he searched the confidential informant and found no contraband, drugs, or money. The entirety of the controlled buy was surveilled by five officers with the York County Drug Task Force, four of which testified at trial regarding their observations. Particularly, Officer Fatland testified that he witnessed the "hand-to-hand transaction" between Appellant and the confidential informant. (N.T., 250, May 10, 2023).

Additionally, Appellant called witness Jo'Nae Deshields, the driver of Chevy. Jo'Nae Deshields testified that she was present with Appellant and the confidential informant, and that she observed the confidential informant hand Appellant $200.00, but that she did not see the confidential informant transfer any drugs to Appellant. *Id.* at 356. Here, multiple witnesses, including a non-law-enforcement witness, Jo'Nae Deshields, testified regarding their eyewitness observations. *Roebuck,* 681 A.2d at 1284.

Furthermore, the factors weigh in favor of maintaining confidentiality to preserve the public's interest in effective law enforcement. *Baker,* 946 A.2d at 694. Detective Pelton testified that although this was the first time the confidential informant participated in a controlled buy, he later participated in multiple buys for

15

separate, unrelated cases. (N.T., 168, May 9, 2023). As such, the Court did not abuse its discretion when it found that, in balancing the factors, the confidential informant's testimony was immaterial and thus denied Appellant's motion to compel identity of the confidential informant.

**IV. Whether the Court improperly denied Appellant's motions to interview potential defense witnesses but rather directed conflict counsel to secure an investigator to interview said witnesses in violation of Appellant's right to self-representation?**

Appellant claims that the Court violated Appellants right to self-representation by denying Appellant his right to interview potential defense witnesses at York County Prison and directing conflict counsel to secure an investigator to interview said witnesses. (Def.'s Statement of Errors Complained of on Appeal, 2, Mar. 19, 2024). At the status hearing on March 23, 2023, the Court addressed Appellant's concerns regarding his ability as a *pro se* litigant to interview and prepare witnesses for trial while housed in York County Prison. In response, the Commonwealth expressed its concerns regarding Appellant's contact with witnesses, due to Appellant's prior conviction for Intimidation of a Witness, a first-degree felony. (Status Hr'g Tr. 9, Mar. 23, 2023).

A lengthy discussion took place on the record concerning Appellant's ability to interview witnesses. Deputy Warden Michael Cuti of the York County Prison discussed the concerns about how to best meet Appellant's need to prepare his

16

case, while also maintaining security at York County Prison. At the conclusion of the hearing, the Court ordered that an investigator from the York County Office of Conflict Counsel meet with Appellant and interview any witnesses Appellant wishes to interview to prepare for trial. (Status Hr'g Tr., 38, Mar. 23, 2023). Accordingly, Appellant's claim that he was denied the ability to interview witnesses for trial is without merit.

V.     **Whether the Court erred when it denied Appellant's request to call several witnesses on the basis that the witnesses were not relevant?**

Appellant asserts the Court improperly denied his request to call several witnesses at trial on the basis that they were not relevant. Specifically, Appellant requested to call unnamed witnesses who would testify that they knew the confidential informant and that he would stage drug buys to "save himself from prison." (Def.'s Statement of Errors Complained of on Appeal, 2, Mar. 19, 2024). At the status hearing on March 23, 2023, Appellant requested to call these unnamed witnesses to show the confidential informant's "habit," "routine," and to prove that the confidential informant was a "drug addict." (Status H'rg Tr., 27, Mar. 23, 2023).

Additionally, Appellant asserts the Court erred in denying Appellant's request to call forensic psychologist Laura Brown to provide expert testimony "on habits, routines, and traits of addicts and to potentially inform the jury the potential mental

17

state of an informant who actively uses drugs." (Def.'s Statement of Errors Complained of on Appeal, 2, Mar. 19, 2024).

Furthermore, Appellant asserts the Court erred in denying Appellant's request to call a corrections officer from York County Prison who would provide expert testimony that "new commits to the prison who were previously searched by York police are found in possession of illegal contraband upon entry to prison." *Id* Appellant asserts this testimony would have cast doubt on the Commonwealth's evidence regarding the search of the confidential informant prior to the interaction with Appellant. *Id.*

The Court found the proposed testimony of these witnesses not relevant and thus denied its introduction. (Status H'rg Tr, 27, Mar. 23, 2023). Pennsylvania Rule of Evidence 401 provides that "[e]vidence is relevant if (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." *See* Pa.R.E., Rule 401. "As with all evidence, expert testimony must first be relevant to the case in order to be admissible." *Commonwealth v. Selenski,* 158 A.3d 102, 106 (Pa. Super. 2017).

Here, the entire controlled buy was testified to by officers with the York County Drug Task Force. The Commonwealth did not call the confidential informant as a witness; therefore, the confidential informant's credibility was not an issue in this

18

case. Appellant's proposed testimony regarding the confidential informant's credibility, the general "habits, routines, and traits of addicts," or expert testimony by a corrections officer regarding searches of new commits to York County Prison, was not relevant. *See* Pa.R.E., Rule 401. As such, the Court did not err in precluding this testimony.

**VI.** **Whether the Commonwealth violated *Brady* by withholding that another individual had the same telephone number that the confidential informant called in Appellant's case?**

Appellant argues the Commonwealth committed violations of *Brady v. Maryland*[5] when it withheld that another individual named Robert Huffmaster had the same telephone number that the confidential informant called to purchase drugs in Appellants case. (Def.'s Statement of Errors Complained of on Appeal, 2-3, Mar. 19, 2023). To establish a *Brady* violation, the burden is on the Appellant to "demonstrate that exculpatory or impeaching evidence, favorable to the defense, was suppressed by the prosecution, to the prejudice of the defendant." *Commonwealth v. Cam Ly*, 980 A.2d 61, 75 (Pa. 2009) (citing *Commonwealth v. Gibson*, 951 A.2d 1110, 1126 (2008)). "To satisfy the prejudice inquiry, the evidence suppressed must have been material to guilt or punishment." *Id.* Although *Brady* is based on the due process requirement, "[t]he prosecutor is not required to

---

[5] *Brady v. Maryland*, 373 U.S. 83 (1963).

19

deliver his entire file to defense counsel, but only to disclose evidence favorable to the accused that, if suppressed, would deprive the defendant of a fair trial." *Id.* (citing *United States v. Bagley*, 473 U.S. 667 (1985)).

Here, Appellant asserts the Commonwealth withheld the fact that the phone number associated with Appellant at this trial, (717) 318-0931, was also used by officers to purchase drugs from a man named Robert Hoffmaster at the same location in this case, and that this phone number is also listed in Mr. Hoffmaster's discovery. (Status H'rg T., 7-8, Mar. 23, 2023). However, Appellant did not raise this issue in a pretrial motion or at trial; nor does Appellant provide any evidence showing that the phone number listed at (717) 318-0931 is associated with Mr. Hoffmaster's discovery. Appellant merely asserts that, after trial, he learned that Detective Pelton knew this information. The Court does not find this assertion sufficient to overcome Appellant's burden of demonstrating that the prosecution withheld exculpatory or impeaching evidence in violation of *Brady,* or that Appellant was prejudiced. *Cam Ly,* 980 A.2d at 75. Accordingly, Appellant's *Brady* claim fails.

## VII. Whether the Court improperly denied Appellant's request to call Detective Pelton as a rebuttal witness?

Appellant argues that the Court erred when it denied his request to call Detective Pelton as a rebuttal witness. (Statement of Matters Complained of on Appeal, 3, Mar. 19, 2024). It is well-settled that "[t]he admission of evidence is

20

within the sound discretion of the trial court, and will be reversed on appeal only upon a showing that the trial court clearly abused its discretion. Similarly, the admission or rejection of rebuttal evidence is also within the sound discretion of the trial court." *Commonwealth v. Miles,* 846 A.2d 132, 136 (Pa. Super. 2004) (internal citations omitted.) "[T]he appropriate scope of rebuttal evidence is defined by the evidence that it is intended to rebut. Where the evidence proposed goes to the impeachment of the testimony of his opponent's witnesses, it is admissible as a matter of right. Rebuttal is proper where facts discrediting the proponent's witnesses have been offered." *Commonwealth v. Colon,* 230 A.3d 368, 379 (Pa. Super 2020).

At trial, Appellant requested to re-call Detective Pelton for the purpose of rebutting Officer Fatland's testimony. (N.T., 342-22, May 10, 2023). Appellant generally claimed that "[Officer Fatland's testimony] contradicted what Officer Pelton testified to." *Id.* at 343. Furthermore, Appellant asserted he wished to elicit testimony from Detective Pelton regarding the location where the confidential informant entered the Chevy, and that this testimony would rebut whether Detective Fatland observed a hand-to-hand transaction. *Id* at 342. The Court agreed with the Commonwealth that Appellant had the opportunity to cross-examine Detective Pelton regarding this issue at an earlier time, and determined this was not proper rebuttal testimony but rather, an argument Appellant was permitted to

21

present to the jury. *Id.* at 344. Accordingly, the Court properly exercised its discretion in denying Appellant's request to call Detective Pelton as a rebuttal witness. *Miles,* 846 A.2d at 136.

## VIII. Whether the Court improperly removed Juror no. 158?

Appellant argues that the Court improperly excused Juror No. 158, the only black juror, "without further inquiring into why the juror stated they could no longer deliberate during active deliberations." (Def.'s Statement of Errors Complained of on Appeal, 3, Mar. 19, 2024). The Pennsylvania Superior Court has found that when the trial court substitutes an alternate juror after deliberations have begun, there is a presumption of prejudice against defendant which "may only be rebutted by evidence which establishes that sufficient protective measures were taken to insure the integrity of the jury function." *Commonwealth v. Saunders,* 686 A.2d 25, 29 (Pa. Super. 1996). The Court explained that "the trial court's instructions to the recomposed jury are of the uppermost importance." *Id.* (emphasis added). First, the Court must instruct the recomposed jury that the discharge of the original juror "was entirely personal and had nothing to do with the discharged juror's views on the case or the juror's relationship with fellow jurors." Second, "the recomposed jury must be directed to begin deliberations anew." *Id.*

Here, while the jury was deliberating in this case, the Court was informed that a

22

juror believed he could no longer participate in deliberations and wanted to be replaced with one of the alternate jurors. (N.T., 411 May 10, 2023). A discussion took place on the record with Juror No. 158, in the presence of the parties but outside of the presence of the remaining jurors. The Court asked Juror No. 158 if he could continue to conscientiously deliberate in this case, he responded "I don't think I can." *Id.* at 414. When asked if it was due to a concern for his emotional well-being, Juror No. 158 responded "yes" and that "[e]motions got the best of [him]." *Id.* The Court asked Juror No. 158 if he could be a fair and impartial juror in this case, and he responded "no." *Id.* at 419. Based on this response, the Court excused Juror No. 158 and replaced him with alternate Juror No. 245. *Id.*

The Court subsequently questioned Juror No. 245 as follows:

> THE COURT: Okay. I just want to make sure that you have been completely secluded or sequestered or not a part of any of the jury deliberations up to this point, is that accurate?
>
> JUROR NO. 245: Correct.

(N.T., 423, May 11, 2023).

Furthermore, the recomposed jury was instructed that because Juror No. 158 was replaced, they were required to start deliberations anew. (N.T., 421, 434-35, May 10-11, 2023). The Court explained to the jury twice that they were to completely start over from "ground zero." *Id.* As such, the Court employed sufficient measures to protect the integrity of the jury function in this case. *Saunders,* 686 A.2d at 29.

23

## IX. Whether the Court erred in failing to order the Commonwealth to produce a Bill of Particulars?

Appellant argues the Court erred when it failed to order the Commonwealth to produce a bill of particulars at the status hearing on September 12, 2022. The purpose of a bill of particulars is "to give notice to the accused of the offenses charged in the indictment so that he may prepare a defense, avoid a surprise, or intelligently raise pleas of double jeopardy and the statute of limitations." *Commonwealth v. Champney,* 832 A.2d 403, 412 (Pa. 2003) (internal citations omitted.).

The record does not reflect that Appellant submitted a timely request for a bill of particulars pursuant to Pa.R.Crim.P. 572. Furthermore, even if Appellant were to have submitted a timely motion, Appellant was in possession of discovery which contained, in greater depth, the same information that would be contained within a bill of particulars. (Status Hr'g Tr., 3, Sept. 12, 2022). Therefore, because Appellant had more extensive information detailing the charges against him than what would have been contained within a bill of particulars, the Court did not err in denying Appellant's request.

## CONCLUSION

Based upon the above reasons, the Court respectfully requests that the Superior Court affirm Appellant's conviction and judgment of sentence.

The Clerk of Courts is directed to provide notice of this entry pursuant to

24

Pa.R.A.P. § 1925(a) to the York County District Attorney's Office; and to

Appellant, Dashawn Jamison.

BY THE COURT,

_____
**AMBER A. KRAFT, JUDGE**

25